CHASEZ, Judge.
This appeal arises from a judgment which sustained defendants’ exceptions of prescription and no right and no cause of action and dismissed plaintiffs’ suit.
The plaintiffs are the co-owners of Lot 7, Square 1197, Third District of New Orleans. They alleged in their petition filed on November 18, 1966 and amended April 24, 1967, that the defendants Richard L. Voelker and Edmund T. Wegener by their negligence caused plaintiffs to lose a certain servitude on Lot 6, Square 1197 which adjoins plaintiffs’ lot. This servitude was allegedly to have taken the form of a community driveway affecting both lots.
The thrust of plaintiffs’ allegations appears to be that Voelker and Wegener, as notaries, failed to record a written act of servitude made by the previous owner of both lots, which would have maintained the servitude against subsequent third parties. Plaintiffs allege further that as this act was never recorded the subsequent purchaser of Lot 6 was able to successfully bring suit to defeat plaintiffs’ claim of a servitude on that lot.
*330 We must state at the outset that plaintiffs’ petition in this suit, as originally filed and as amended, has by its failure to allege several pertinent matters of fact, presented us considerable difficulties. As we have only these pleadings such as they are before us in this matter, we are at a disadvantage in attempting to reconstruct the sequence of events which led up to the instant suit. However some events seem clear and we will accept these for the purposes of this opinion.
On December 3, 1954, Mrs. Hazel Granier Sanchez was the owner of both Lot 6 and Lot 7 which are involved in this suit. She allegedly attempted to establish by authentic act executed before Richard L. Voelker, Jr., a servitude over both lots for a community driveway to benefit both lots. On the same day she sold Lot 7 to the plaintiffs, by sale and resale through a local homestead association. These acts of sale of Lot 7 made reference to the servitude allegedly created by the separate act of servitude, and were passed before Edmund T. Wegener. Apparently either Voelker or Wegener or both, were acting in behalf of the plaintiffs in some manner; at least plaintiffs allege Voelker was compensated by them for his services. In any event the act of servitude was not recorded. On January 10, 1963, Lot 6 was acquired by Raymond S. McGee. A dispute arose between McGee and plaintiffs which subsequently led McGee to file suit against the plaintiffs to have his lot declared free of the alleged servitude.
In their answer to McGee’s suit, plaintiffs brought a third party demand against the notary Voelker, on the theory that it was Voelker’s negligence that caused plaintiffs to lose the servitude, if indeed it was lost.
Voelker met this third party demand with an exception of improper cumulation of actions, on the theory that LSA-C.C.P. art. 1111 would not allow judgment against him on a third party demand except for “all or part of the principal demand.” The trial judge sustained Voelker’s exception and dismissed him from the McGee suit. From this judgment the third party plaintiffs, (plaintiffs herein,) appealed. This court affirmed the lower court’s decision, see McGee v. Demery, 176 So.2d 679, La.App.1965. Judge McBride, as organ of the court, in his opinion stated:
“If there be any indebtedness on the part of the notary public to appellants, the latter cannot engraft their demand therefor onto the instant law suit. By no stretch of the imagination could it be said that the notary public is liable to the appellants ‘for all or part of the principal demand’, and unless there was such liability, i. e. ‘for all or part of the principal demand’, there is no room herein for the asserted third-party demand. The principal demand involves a real action, a prayer for injunctive relief, a possible boundary dispute, and alternatively the rescission of a sale, while, on the other hand, the third-party demand entails a claim sounding in tort. The principal demand and the claim against the third party are wholly unrelated.” 176 So.2d at 680-681.
The third party plaintiffs applied for a writ of certiorari to the Supreme Court from that decision, but the writ was denied on October 25, 1965.
The merits of the McGee suit were then tried. The trial court found for McGee, holding no servitude existed as the act of servitude was never recorded, and the reference to the act of servitude in the act of sale did not of itself create or preserve the servitude. This judgment was rendered on June 16, 1966, and no appeal was taken.
On November 18, 1966, as previously stated, plaintiffs filed the instant suit against the notary Voelker, and on April 24, 1967 amended their petition to include Wegener as a party defendant. Voelker and Wegener then lodged their exceptions. Voelker pleaded prescription, vagueness and no right and no- cause of action, while Weg-ener simply pleaded no cause of action. *331 The trial judge sustained all exceptions pleaded by both defendants, except the exception of vagueness, and dismissed plaintiffs’ suit. He gave no reasons for his judgment.
As to the exception of prescription, we must decide what prescriptive period applies and what date we must accept as that which began the tolling of the period. In examining the first question we find that this was a claim which might possibly have been filed either under contract or tort. We realize however that Judge McBride was of the opinion in his McGee decision, supra, 176 So.2d at 681, that this claim sounded in tort. Further the plaintiffs themselves in framing their petition, and in their brief and argument before this court stated that their action was one ex delicto and urged the one year prescriptive period applying to torts. LSA-C.C. 3536.
The more difficult problem is that of determining the date on which this one year prescriptive period began to run. Appel-lee Voelker has suggested several alternatives each one being more than one year prior to the date this suit was filed, i. e. November 18, 1966. As we have no reasons for judgment from the trial judge we know neither the length of the period he found to be applicable, nor the date which he found it to begin.
We see ab initio that the date the alleged tortious act occurred, that is, the date the notaries allegedly negligently failed to record the act of servitude, was December 3, 1954. Of course if this date was the date that prescription began to run, plaintiffs’ action has long since prescribed.
The next possible date is November 12, 1963 when McGee filed his suit against plaintiffs, for it was at this time when plaintiffs herein became aware that the act of servitude was never recorded. Again should this be the date that prescription began to run, plaintiffs’ action has prescribed.
Voelker suggests that the latest possible date plaintiffs can claim as marking the beginning of prescription is the date on which the judgment dismissing the third party demand in the McGee suit, became final, i. e. October 25, 1965, the date writs were denied by the Supreme Court. This date also would prescribe the action.
Plaintiffs themselves claim that the true date which is controlling in this case is June 16, 1966, when there was an actual judicial determination that they had acquired no servitude rights on the McGee lot defensible against third parties. They argue it was not until this time that they actually suffered damages, and that in fact any suit against the notaries prior to this time would have been premature.
A very similar situation was presented to this court in Marchand v. Miazza, 151 So.2d 372, La.App., 4 Cir. 1963, and we find this case to be persuasive here. Marchand involved a malpractice suit by an individual against several attorneys who had represented her in several contractual disputes. It was plaintiff’s claim that the failure of the attorneys to properly represent her caused her to lose certain property rights. The attorney defendants met the suit with a plea of prematurity on the theory that as the plaintiffs had four suits pending wherein she was through other attorneys still attempting to enforce the contractual rights which she was claiming the defendant attorneys had allegedly caused her to lose, it was possible that the court would decide in the pending suits that the contractual rights.had not been lost, thus the alleged malpractice would have caused plaintiff no damage. To this plaintiff argued that prescription had begun to run against her in the malpractice suit and to make her wait until the pending suit was decided would put her in the position of not being able to maintain her action at all because by then her cause of action would have prescribed.
In answering plaintiff’s objection this court stated:
“(I)n suits for damages occasioned by wrongful act, prescription commences to run where, in point of time, the damage *332 follows the wrongful act not from the time the act was done, but from the date the damage was sustained in consequence of it. In the present case until it has been established that the defendants wrongfully permitted a loss to plaintiff, no damage can be shown.” 151 So.2d at 375.
The Court stated further:
“As to the prescription following the adjudication of plaintiff’s rights in the four lawsuits now pending, the courts will not stand by and rule that her claim is premature today and prescribed tomorrow, we would apply the doctrine of contra non valentem agere nulla currit prescriptio.” 151 So.2d at 375.
Applying this rationale to the case herein, we find that plaintiffs’ cause of action against these notaries, if indeed they have one, could not possibly have arisen until there was a judicial determination that plaintiffs had no right of servitude on the McGee property. Thus the one year prescriptive period began as plaintiffs contend on June 16, 1966, when judgment was rendered in the McGee suit, and therefore plaintiffs’ suit has not prescribed. To hold otherwise would indeed place the plaintiffs in an untenable position. Any suit against the notaries prior to the McGee judgment would have been successfully met by a plea of prematurity, particularly in light of the Marchand decision. Thus to say nonetheless that prescription was all the time running would be to hold that plaintiffs were premature today and prescribed tomorrow which we cannot now allow to happen any more than the Court could have allowed it in Marchand.
Next we reach the remaining exceptions which were raised by the appellees and sustained by the trial judge, the exceptions of no right and no cause of action. Actually it was only Voelker who joined both exceptions, Wegener more properly limited his exception to that of no cause of action, which is the applicable one of the two herein. We will treat Voelker’s exceptions as simply one of no cause also, for he made no attempt to urge no right of action in his argument and it is apparent there is no basis for this exception herein.
Again we must state that as the trial judge gave no reasons for his decision we have no way of knowing the basis for his judgment sustaining the no cause exceptions. Appellees suggest three reasons why these exceptions are valid.
First, Wegener contends that the alleged servitude which formed the basis of the previous McGee suit was indeed a valid servitude, regardless of the judgment in that suit. He argues that this servitude was created in the act of sale from Mrs. Sanchez to the plaintiffs, and as that act of sale was recorded, the servitude was effective against McGee. He concludes that as the plaintiffs did have a valid servitude, this destroys plaintiffs’ cause of action, which is based on the allegation that the servitude was never created. In support of his contention, on the joint stipulation of all parties, Wegener referred us to a certified copy of an excerpt of the act of sale and notation of servitude as contained in the Conveyance Records of Orleans Parish.
As to Wegener’s argument we can only state that the trial judge in the McGee suit had before him all the evidence pertinent to the matter, and we must assume that this evidence included the excerpts from the Conveyance records which Weg-ener now directs to our attention. The trial judge decided that no servitude existed and we cannot be placed in the position now of reviewing the McGee decision.
We find merit in the second and third reasons offered by appellees for sustaining the no cause exception. Basically they contend that nowhere in plaintiffs’ petition do they allege that the act of servitude was actually completed, that is that it was signed by all material parties to the act. Thus they conclude as they are to be *333 held to the duties of notaries in the matter, they could not have been responsible for recording an incomplete act. In examining the petition we find in its amendment the allegation that Voelker “returned” the act to Wegener for procurement of one additional signature. Taken alone this allegation would seem to defeat any possible cause of action unless plaintiffs can allege some particular reason why the defendants as notaries should be held responsible in this case for procuring this signature.
Finally appellees contend that nowhere in plaintiffs’ petition is it alleged that the defendants were acting for plaintiffs in the matter. We do find the allegation that plaintiffs “paid Voelker for his professional services”, however, there is no such allegation as to Wegener, and his whole status in this suit is at best unclear. In fact if anything it appears from the wording of the petition that Voelker and Wegener were representing either Mrs. Sanchez or the homestead association. Certainly any action for malpractice against the notaries must be predicated upon a breach by the notaries of a duty owed by them to the plaintiffs to properly represent them.
Rather than dismissing plaintiffs’ suit, however, for the defects in the pleadings, it is our opinion that the trial judge under the express provision of LSA-C.C.P. art. 934 should have granted plaintiffs leave to amend to attempt to cure the defects in their petition. For an excellent discussion of the jurisprudence as it has developed before and after the adoption of LSA-C.C.P. 934, see Succession of Guidry v. Bank of Terrebonne & Trust Co., 193 So.2d 543, La.App.1st Cir. 1966.
From these pleadings and from the argument and brief by counsel before us we feel that it may be possible for plaintiffs to allege the proper facts necessary to state a cause of action.
For the reasons hereinabove expressed the judgment insofar as it sustains defendant Voelker’s plea of prescription and no right of action is reversed, and the judgment insofar as it sustains defendant Voelker’s exceptions of no cause of action, and Wegener’s exception of no cause of action, is reversed only to the extent that it dismisses plaintiffs’ suit. We remand this case to the trial court with instructions to allow plaintiffs’ time to amend their petition to cure its defects if they can.
Reversed in part, affirmed in part, amended in part and remanded.