562 So.2d 1116 (1990)
M.A. BRAUD, Jr. and Geraldine T. Mire, Wife of M.A. Braud, Jr.
v.
NEW ENGLAND INSURANCE COMPANY, Dependable Insurance Association and Frank Uddo.
No. 89-CA-1876.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 1990.
*1117 Paul B. Deal, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for defendants/appellees.
C. James Gelpi, New Orleans, for plaintiffs/appellants.
Before LOBRANO, WARD and ARMSTRONG, JJ.
LOBRANO, Judge.
In this legal malpractice case we must decide the date when prescription began to accrue. The trial court dismissed the suit of Mr. and Mrs. M.A. Braud, Jr. (the Brauds) against their former attorney, Frank Uddo and his liability insurers, New England Insurance Company and Dependable Insurance Association, (collectively referred to as Uddo) on an exception of prescription.

FACTS:
This matter was previously before this Court on an exception of no cause of action wherein much of the factual background is discussed. Braud v. New England Insurance Company, 534 So.2d 13 (La.App. 4th Cir.1988). We only repeat those facts which are pertinent to the prescriptive issue.
In June of 1984, Uddo obtained, on behalf of the Brauds, a default judgment against Citicorp in the amount of $4,000,000.00.[1] On April 30, 1985 Citicorp filed a nullity action against the Brauds, and others, asserting that the default judgments obtained by Uddo were null and void. The basis of their allegation was that Uddo failed to present sufficient evidence to support the judgments, and thus they were obtained as a result of an "ill practice". The Brauds were served with that suit on June 25, 1985. Citicorp and the Brauds settled the nullity suit on August 13, 1986 for $200,000.00.[2]
On September 12, 1986 the Brauds filed the instant suit against Uddo asserting his malpractice in obtaining the default judgments. Although there has never been a judicial determination that the default judgments were in fact null and void, the Brauds assert that because of Citicorp's judicial attack on Uddo's actions in obtaining the judgments they were forced to settle the matter thus sustaining damages.
Relying on Rayne State Bank and Trust v. National Union Fire Insurance Company, 483 So.2d 987 (La. 1986) the trial court concluded that prescription began to accrue on April 30, 1985, the date the nullity *1118 suit was filed, and thus the Braud's malpractice suit was untimely.
The Brauds perfect this appeal asserting (1) that the trial court misapplied the holding of Rayne State Bank, supra, and (2) the trial court erred in failing to apply the doctrine of contra non valentem.
We reverse. For two reasons, we hold that prescription did not begin to accrue until the nullity suit was concluded.

ERROR NO. 1:
This is a tort action governed by the prescriptive period of La.Civil Code Article 3492. That article provides: "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."
It is generally recognized that the commencement of prescription depends on the existence of the following elements: an act, omission or event; knowledge or notice by the victim of the act, omission or event; and, damage sustained as a result thereof. Jones v. Texas & P. Ry. Co., 125 La. 542, 51 So. 582 (La.1910); Corsey v. State Department of Corrections, 375 So.2d 1319 (La.1979); Bellamy v. Janssen, 477 So.2d 928 (La.App. 4th Cir.1985) writ den., 484 So.2d 667 (La.1986); Henderson v. Diamond Datsun, Inc., 413 So.2d 542 (La.App. 4th Cir.1982); Marchand v. Miazza, 151 So.2d 372 (La.App. 4th Cir.1963).
In the instant case, there can be no serious disagreement concerning the first two elements. At the very latest, when the nullity action was filed on April 30, 1985, the Brauds obtained knowledge that Uddo may have committed an act or omission in obtaining the default judgments which could constitute legal malpractice. Serious disagreement exists, however, as to when the Brauds sustained sufficient damages for the purpose of commencing prescription.
Uddo relies on the holding of Rayne State Bank, supra. In that case, the defendant-attorney prepared a chattel mortgage for the plaintiff bank which did not specify the location of the chattels as required by the Chattel Mortgage Act in effect at that time. On January 27, 1981 the mortgage debtors instituted proceedings to declare the mortgage invalid. On April 28, 1981 the bank filed a third party demand against the defendant-attorney who prepared the mortgages. After settling with the debtors on October 2, 1981 the bank, on March 28, 1982, filed the malpractice suit. The defendant asserted that the bank had knowledge of the defects in the mortgages as early as March of 1980, and hence prescription began to toll on that date. The court held that prescription commenced when the bank sustained damages because of the defect in the mortgage, not when they merely acquired knowledge of the legal deficiencies. The Court opined that the "damage to the bank arising from the defective mortgages was not susceptible of ascertainment until the validity of the mortgages was attacked." Rayne State Bank, supra at 996. Thus, although the full extent of the bank's damage was not known, the court reasoned that once the mortgages were judicially attacked on January 27, 1981, the bank sustained some damage and hence prescription commenced as of that date.
Uddo argues that Rayne supports the proposition that if an attorney's work product is judicially attacked, prescription commences from that date with respect to any malpractice action arising therefrom. In essence, Uddo suggests an inflexible application of the Rayne holding to all such situations. We disagree.
We are of the opinion that the particular facts and circumstances of each case should be considered when determining the commencement of prescription. In Rayne the bank was well aware of the defective mortgage long before the debtors judicially attacked it. The "malpractice" was apparent on the face of the mortgage. However, as long as the debtors paid their outstanding loan the bank sustained no damage because of the defect. However, once the debtors attacked the validity of the mortgage, the bank was fully aware of the loss of collateral which they would sustain, thus it was reasonable for the court to conclude *1119 that prescription would commence at that point.
In the instant case, it was not apparent on the face of the pleadings that there was a defect in the default judgments, and thus, even on April 30, 1985 when the nullity suit was filed, the Brauds had no certainty they would sustain damages. The determination of when sufficient damage occurs to commence the accrual of prescription is a determination which necessarily depends on the particular circumstances of each case. In Marchand v. Miazza, 151 So.2d 372 (La.App. 4th Cir. 1963), this court noted that prescription does not commence with the commission of a wrongful act, but with the sustaining of damages. We held in that case that "... until it has been established that defendants wrongfully permitted a loss to plaintiff, no damage can be shown." Id. at 375. See also, Hero Lands v. Borello, 459 So.2d 658 (La.App. 4th Cir.1984); Demery v. Voelker, 216 So.2d 328 (La.App. 4th Cir. 1968).
We conclude that at the time the nullity suit was filed the possibility of damage to the Brauds was speculative, uncertain and contingent upon a judicial determination that the judgments were obtained improperly. If the court had upheld the validity of the judgments, the Brauds would have no cause of action in malpractice. Once, however, they settled the nullity action at a substantial loss because of the alleged improper default judgments then, at that point, prescription commenced. To hold otherwise would have required the Brauds to institute a malpractice suit prior to the conclusion of the nullity action. The commencement of such a suit would most certainly be premature since the court could not have determined if malpractice had occurred until the nullity suit was resolved. Thus because Uddo's malpractice was not readily apparent on the face of the judgment and was merely an allegation when the nullity proceedings were instituted, and because the Brauds' damages, if any, were highly speculative at that time, we hold prescription did not commence until the nullity action was concluded. This case is distinguishable from the facts in Rayne State Bank, supra, and we conclude that that decision is not controlling.

ERROR NO. 2:
We also conclude that contra non valentem prevented the accrual of prescription.
"Contra non valentem is the shortened form of the phrase contra non valentem agere nulla currit proescriptio, meaning prescription does not run against a party unable to act. Although La.Civ.Code Art. 3521, now Art. 3467, provides that prescription runs against all persons unless they are excepted by law, Louisiana jurisprudence recognized this limited exception based on an ancient civilian doctrine." Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986) at p. 721, citing from Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979). The contra non valentem doctrine recognizes four situations where prescription will not commence. Plaquemines Parish Commission Council v. Delta Development, Inc., 502 So.2d 1034 (La.1987); Corsey v. State Dept. of Corrections, supra. We find one of those applicable to this case. After a review of the record we conclude that there exists a "condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting...." Plaquemines Parish Commission Council v. Delta Development, supra at 1054.
During the pendency of the nullity proceedings conditions existed which effectively prevented the Brauds from bringing a malpractice claim against Uddo. In the nullity action Uddo was defending the validity of those three default judgments which he obtained, two of which involved the Brauds. Furthermore, all parties involved in the nullity suit, including the Brauds, continued to defend the validity of the judgments. They, as well as Uddo, maintained that the judgments were not based on ill practice. Thus, for the Brauds to have filed a malpractice claim against Uddo prior to the termination of the nullity proceeding would have placed them in the untenable position of asserting, on the one *1120 hand, that the judgments were invalid, while, on the other hand, asserting they were valid. This situation constitutes a condition connected with the proceedings which effectively prevented any malpractice suit until the nullity proceedings were resolved.
We therefore hold that contra non valentem is applicable and prescription did not commence until the termination of the nullity proceeding. At that time the condition which prevented them from filing suit ceased, and prescription began to accrue.
For the foregoing reasons, the judgment of the district court maintaining Uddo's exception of prescription is reversed; the case is remanded to the district court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Uddo also obtained two other default judgments in favor of other plaintiffs in that same litigation.
[2] The Brauds released their rights in the $4,000,000.00 default judgment against Citicorp for their proportionate share of the $200,000.00 settlement. The plaintiffs in the other default judgments also shared proportionately in the $200,000.00.