576 So.2d 466 (1991)
M.A. BRAUD, Jr., and Geraldine T. Mire, wife of M.A. Braud, Jr.
v.
NEW ENGLAND INSURANCE COMPANY, Dependable Insurance Association and Frank Uddo.
No. 90-C-1358.
Supreme Court of Louisiana.
March 11, 1991.
Rehearing Denied April 25, 1991.
*467 Paul B. Deal, Lemle & Kelleher, New Orleans, for New England Ins. and Frank J. Uddo defendants-applicants.
C. James Gelpi, New Orleans, for M.A. Braud and Geraldine T. Mire plaintiffs-respondents.
DENNIS, Judge.
This is a legal malpractice suit by M.A. Braud, Jr., and his wife against Braud's former attorney, Frank Uddo, and the attorney's liability insurers alleging that Braud sustained loss and damage due to the attorney's negligence in improperly obtaining and confirming a $4 million default judgment for Braud against Citicorp Industrial Credit Corporation. The principal question is whether the action is prescribed because it was filed more than one year after the attorney's alleged errors and omissions or whether the commencement of prescription was delayed until the outcome of a lawsuit by Citicorp against Braud to annul the $4 million default judgment for the attorney's alleged ill practices. The trial court sustained Uddo's exception of prescription reasoning that prescription commenced when Citicorp's action of nullity against Braud was filed. The Court of Appeal reversed deciding that prescription did not commence until Citicorp's suit against Braud to set aside the judgment had been concluded by settlement. Braud v. New England Ins. Co., 562 So.2d 1116 (La.App. 4th Cir.1990).

FACTS
Braud's suit against Citicorp was a "lender liability" action filed in October of 1983 in which he and other shareholders of Napasco International, Inc. (NAPASCO) alleged that Citicorp caused the financial ruin of NAPASCO by lowering the line of credit Citicorp was contractually obligated to provide the company. Braud and other major shareholders of NAPASCO sought $12 million in damages as a result of Citicorp's alleged breach of the line of credit agreement. When answer was not filed timely, Uddo obtained a judgment by default against Citicorp on behalf of Braud in the amount of $4 million dollars. Uddo also obtained default judgments in favor of the other NAPASCO plaintiffs totalling an additional $8 million.
Citicorp filed a nullity action in federal court on April 30, 1985 against Braud and the other NAPASCO plaintiffs attacking the validity of the default judgment. Citicorp alleged that Uddo had obtained the judgment by ill practices in that he failed to give Citicorp notice of the nullity proceedings despite knowing the identity of its local counsel, failed to follow Louisiana procedural law in obtaining the default judgment and failed to introduce sufficient evidence to present a prima facia case in support of the default judgment. Braud was served with this nullity suit on June 25, 1985. Uddo did not represent Braud in the nullity action because Braud discharged him before Citicorp filed suit. However, Uddo continued to represent the other NAPASCO shareholders, and defended the validity of their default judgments against Citicorp's nullity action. During the trial of the nullity action on August 13, 1986, Citicorp and the NAPASCO plaintiffs entered into a settlement agreement whereby Braud and the other NAPASCO shareholders accepted $200,000 from Citicorp in satisfaction of the default judgments obtained by Uddo. As a result Braud received only some $72,000 in satisfaction of the $4 million dollar default judgment obtained on his behalf by Frank Uddo.
Braud filed the instant legal malpractice suit against Uddo and his insurers on September 12, 1986, claiming that Uddo committed malpractice by negligently failing to present a sufficient quantity and quality of available evidence in obtaining the $4 million judgment against Citicorp. Braud alleged that but for Uddo's negligence in obtaining the default judgment, Braud would not have been put in the position of having to settle with Citicorp for less than the amount of the default judgment. As a result of Uddo's alleged negligence, Braud claims $4 million in damages for loss of the judgment and $1.2 million in lost interest *468 on the judgment. Defendants filed an exception of prescription which the trial court sustained, relying on Rayne State Bank and Trust v. National Union Fire Insurance Co., 483 So.2d 987 (La.1986), to conclude that prescription began to accrue on April 30, 1985, the date the nullity suit was filed, and that the Braud's malpractice suit was untimely. The court of appeal reversed and remanded the case to the trial court for further proceedings holding that the suit was timely because prescription of the malpractice claim did not commence until the underlying nullity suit was concluded. Braud v. New England Ins. Co., 562 So.2d 1116 (La.App. 4th Cir.1990). The court of appeal reasoned that prior to the conclusion of the nullity suit the possibility of damage to Braud was speculative and contingent upon a judicial determination that the judgments were obtained improperly. The court concluded that the doctrine of contra non valentum also prevented the accrual of prescription until that time due to Braud's inability to sue Uddo while Uddo continued to represent the other NAPASCO plaintiffs in the nullity proceedings and thereby defended the validity of the default judgments obtained against Citicorp.
We granted writs to determine whether the court of appeal erred in reversing the trial court's finding that prescription commenced when Citicorp's nullity suit was filed, and, if so, whether the fact that Braud could not bring a malpractice action against Uddo without alleging facts contrary to his position in the nullity proceeding tolled the running of prescription until the conclusion of Citicorp's nullity action.

DISCUSSION
In the absence of an express warranty of result, a claim for legal malpractice is a delictual action subject to a liberative prescription of one year. La.C.C. Art. 3492 (1983); Rayne State Bank and Trust Co. v. National Union Fire Ins. Co., 483 So.2d 987 (La.1986); Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1st Cir.1983); Norwood v. Fish, 537 So.2d 783 (La.App. 2d Cir.), writ den., 539 So.2d 634 (La.1989); Sturm v. Zelden and Zelden, 445 So.2d 32 (La.App. 4th Cir.1984). This prescription commences to run from the day injury or damage is sustained. La.C.C. art. 3492. But there are countervailing factors that may serve to suspend or delay the commencement of prescription. For example, during the attorney's continuous representation of the client regarding the specific subject matter in which the alleged wrongful act or omission occurred, prescription will be suspended. Olivier v. National Union Fire Ins. Co., 499 So.2d 1330 (La.App. 3rd Cir.1987); Malone v. Wright, 525 So.2d 13 (La.App. 3rd Cir.1988); Newsom v. Boothe, 524 So.2d 923 (La.App. 2d Cir.), writ denied, 531 So.2d 479 (La.1988). See also Mallen and Smith, Legal Malpractice, § 18.12 (3rd ed. 1989).
Braud contends that prescription did not commence when Citicorp filed suit against him to annul the $4 million judgment because he sustained no damage from the mere filing of the action. We do not agree with this proposition. True enough, no damage was sustained by him by virtue of the mere existence of deficiencies in the work or work product of his former attorney, Uddo. The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harmnot yet realizeddoes not suffice to create a delictual action. Rayne State Bank and Trust Co. v. National Union Fire Ins. Co., 483 So.2d 987 (La.1986). See Budd v. Nixen, 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433 (1971); Luick v. Rademacher, 129 Mich.App. 803, 342 N.W.2d 617 (1983). Until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue. Rayne State Bank and Trust Co. v. National Union Fire Ins. Co., 483 So.2d 987 (La. 1986). See Budd v. Nixen, 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433 (1971); Luick v. Rademacher, 129 Mich.App. 803, 342 *469 N.W.2d 617 (1983). Like the client in Rayne State Bank & Trust v. National Union Fire Ins. Co., supra, Braud sustained appreciable and actual harm when the validity of his right or asset was attacked by a third party because of the alleged negligence of his former attorney and he was compelled to incur and pay attorney's fees, legal costs and expenditures. Accordingly, Braud's cause of action against Uddo accrued the day Citicorp filed suit against Braud to annul his $4 million judgment against the corporation. Since Braud did not file suit to enforce the present legal malpractice action until more than one year later, his claim is prescribed unless there existed some condition which delayed the commencement or running of prescription.
Braud implies that Uddo continued to represent him during the Citicorp suit and that prescription was therefore tolled during that litigation under the continuous representation doctrine. This contention is based on the assertion that Uddo represented Braud in the nullity action by continuing to represent the other shareholders because Braud was a member of the same class of stockholders. There is nothing in the record except Braud's assertions, however, to support a continuous representation theory. At the hearing on the exception of prescription the parties entered a stipulation which, although lacking somewhat in clarity, indicates that the attorneyclient relationship between Braud and Uddo was terminated prior to the date that Citicorp filed suit against Braud to annul the $4.0 million judgment. Moreover, it is clear that Uddo did not defend or represent Braud in that case. The Citicorp suit was brought in the United States District Court, and the typically detailed written pretrial stipulation filed in that proceeding reflects that Braud was represented by his present counsel, C. James Gelpi, while Uddo represented other individuals. In addition, Joel DeSilva, the only witness appearing at the hearing on the exception of prescription, testified that Gelpi hired him in January, 1985, to calculate the damages suffered by Braud as a result of the failure of NAPASCO. This confirms that Gelpi had replaced Uddo as Braud's attorney even prior to the filing of Citicorp's nullity action. In light of the above, we conclude that there was no continuing attorneyclient relationship between Braud and Uddo which would require that the commencement of prescription on the Brauds' malpractice claim against Uddo be tolled until the termination of Citicorp's nullity action.
Braud also contends that the doctrine of contra non valentum applies here to prevent the commencement of prescription on the claim against Uddo until after the termination of Citicorp's nullity action. This argument is well-articulated in the opinion of the court of appeal:
During the pendency of the nullity proceedings conditions existed which effectively prevented the Brauds from bringing a malpractice claim against Uddo.... [A]ll parties involved in the nullity suit, including the Brauds, continued to defend the validity of the judgments. They, as well as Uddo, maintained that the judgments were not based on an ill practice. Thus, for the Brauds to have filed a malpractice claim against Uddo prior to termination of the nullity proceeding would have placed them in the untenable position of asserting, on the one hand, that the judgments were invalid, while, on the other hand, asserting they were valid.

Braud v. New England Ins. Co., 562 So.2d 1116, 1119-20 (La.App. 4th Cir.1990).
The court of appeal failed to recognize, however, that this situation did not prevent Braud from asserting his malpractice claim during the pendency of the nullity action. Both Louisiana and federal law recognize that it is sometimes necessary for parties to maintain alternative, inconsistent and even mutually exclusive positions in the course of litigation. See La.Code Civ.Pro. art. 892 ("[A] petition may set forth two or more causes of action in the alternative, even though the legal or factual bases thereof may be inconsistent or mutually exclusive."); La.Code Civ.Pro. art. 1006 ("An answer may set forth two or more *470 defenses in the alternative, even though the factual or legal bases thereof may be inconsistent or mutually exclusive."); Fed. R.Civ.P. 8(a) and (e)(2). Thus, the mere fact that Braud's malpractice claim against Uddo would have been inconsistent with Braud's position vis-á-vis Citicorp did not prevent Braud from asserting his claim against Uddo either as a third party claim in the nullity action or as a separate suit in state court. Accordingly, contra non valentum did not operate to delay the commencement of prescription on Braud's malpractice claim against Uddo until the termination of Citicorp's nullity action.

CONCLUSION
Braud's cause of action against Uddo accrued on April 30, 1985, when Braud sustained appreciable damage because Citicorp filed the action in federal court attacking the validity of the default judgment based on Uddo's alleged ill practices. This wrongful conduct by the attorney, if proven, would have constituted grounds for both an annulment of the $4 million judgment he had obtained and a damage judgment against him to repair the harm done to his client by malpractice. However, Braud did not bring an action to enforce this cause of action until he filed the present suit on September 12, 1986, more than one year later. Because Braud has not shown that the commencement of prescription was delayed or that the running of prescription was interrupted or suspended, we conclude that his action has prescribed.
For the foregoing reasons, we reverse the decision of the court of appeal and reinstate the trial court's judgment sustaining defendant's exception of prescription and dismissing plaintiffs' claim.
REVERSED.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting:
Until a court declared the judgment null or until the judgment was effectively set aside by settlement, Braud did not have a matured cause of action against Uddo. Was he required to file suit on the possibility that his judgment was null?
While it appears questionable whether Braud has a claim against Uddo, prescription did not begin to run when Citicorp filed the suit for nullity. Braud was then exposed to payment of attorney's fees and other legal costs, but there was no reason to conclude that the obligations resulted from malpractice by Uddo. Braud was in the position of having a facially valid judgment for $4 million and certainly had no desire to cast doubt upon it by asserting in a court of law that his lawyer, who obtained the judgment, was guilty of malpractice.
Therefore, I respectfully dissent.