677 So.2d 716 (1996)
Rodney HENDRICK
v.
STONE, PIGMAN, WALTHER, WITTMANN & HUTCHINSON, et al.
v.
William E. STEFFES.
No. 95 CA 1577.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
Rehearing Denied August 19, 1996.
*717 Daniel R. Atkinson, Sr., Charles A. Schutte, Jr., Baton Rouge, Henry B. Bruser, III, J. Michael Chamblee, Alexandria, for Defendants-Appellants, Stone, Pigman, Walther, Wittman & Hutchinson; Attorneys' Liability Assurance Society, Inc.; Randall M. Smith; John M. Landis; Phillip A. Wittmann, and William E. Brown.
Paul B. Deal, New Orleans, for Defendant in Cross-Claim-Appellee, William E. Steffes.
Before WATKINS and PARRO, JJ., and THOMAS W. TANNER, J. Pro Tem.[1]
THOMAS W. TANNER, Judge Pro Tem.
Defendant in this legal malpractice action, Stone, Pigman, Walther, Wittmann & Hutchinson (referred to hereinafter as Stone, Pigman) appeals from a judgment in the trial court which dismissed its claim for contribution and indemnity against a co-defendant, William E. Steffes, on an exception of prescription. We find that the trial court was clearly wrong in sustaining the exception of prescription. and we reverse; however, we find that Steffes' exception of res judicata to the cross-claim should have been sustained.[2] Our reasons follow.

*718 FACTS
The underlying facts in this case are somewhat convoluted. Plaintiff, Rodney Hendrick, was represented in bankruptcy proceedings in bankruptcy court by William E. Steffes. Defendant, David Rubin, represented the bankruptcy trustee. On February 13, 1985, the bankruptcy judge granted an order authorizing a sale of stock which had been owned jointly by Hendrick and his ex-wife. The sale was contested by Hendrick. At the hearing, the trustee expressed reservations as to the sale, and the bankruptcy judge instructed him to investigate possible fraud on the part of the buyers and to bring an action, if warranted, to recover claims on the part of the bankruptcy estate. However, the order authorizing the sale was signed and no such reservation of rights was incorporated, although the minute entry reflects the bankruptcy judge's instructions. No appeal was taken from that order.
On April 29, 1985, Stone, Pigman was appointed as special counsel to the bankruptcy trustee to investigate possible fraud in the stock sale. Depositions were taken on November 18 and 19, 1985, and on January 23 and 24, 1986, which revealed fraud forming the basis for a subsequent RICO action filed by Stone, Pigman on February 12, 1986, against the purchasers of the stock. On October 26, 1987, Hendrick's bankruptcy proceedings were terminated and Steffes' representation ceased; on January 1, 1987, Hendrick had retained Stone, Pigman personally.
In September of 1987, Stone, Pigman learned that defendants in the RICO action intended to raise defenses of res judicata and collateral estoppel based on Hendrick's failure to appeal the February 13, 1985 order authorizing the stock sale, and realized shortly thereafter the discrepancy between the minute entry and the order which authorized the sale. On January 26, 1989, the United States District Court rendered a decision granting defendants' motion for summary judgment, finding res judicata and collateral estoppel were applicable because there was no appeal from the order authorizing the stock sale. The United States Fifth Circuit Court of Appeals affirmed, and on October 1, 1990, the United States Supreme Court denied writs.
On January 10, 1991, Hendrick filed the instant malpractice action naming Steffes, Rubin, and Stone, Pigman as defendants. On April 15, 1994, a hearing was held on exceptions of prescription filed by Steffes and Rubin against Hendrick in the main demand and against Stone, Pigman on its cross-claim for contribution and indemnity. On April 26, 1994, the trial court signed a judgment dismissing Steffes and Rubin from the main demand, and on June 17, 1994, the judgment dismissing Stone, Pigman's cross-claims on the basis of prescription was signed. Stone, Pigman appeals from the June 17 judgment only.[3]

*719 LAW
Stone, Pigman argues as its first assignment of error that the trial court was wrong "in failing to recognize that its finding that prescription against Hendrick's legal malpractice claim was interrupted as to the [Stone, Pigman] defendants requires a finding that prescription must also be interrupted as to Steffes, an alleged ... joint tortfeasor." In other words, appellant argues, if prescription is interrupted as to Stone, Pigman, it must also be interrupted as to Steffes. Appellant goes on to assign as error the trial court's dismissal of Hendrick's claim against Steffes before determining on the merits whether Steffes and Stone, Pigman were joint tortfeasors.
In light of the above argument, we find that the primary issue to be resolved in this case is whether a cross-claim for contribution falls if the main demand against the cross-defendant is dismissed on an exception of prescription, when the defendants are alleged to be joint tortfeasors and potential solidary obligors.[4] That issue requires an analysis of the underlying rationale for a claim for contribution.
At the outset, we believe a distinction should be made between the right to "claim" contribution and the right to "collect" contribution. The right to claim contribution is legally the "right of action" for contribution and the right to collect contribution is legally the "cause of action" for contribution. As a general rule, a person cannot exercise his right of action until the corresponding cause of action accrues. However, La.Civ. Code art. 1805 has provided an exception to this general rule and authorizes a solidary obligor to exercise his right of action for contribution before the cause of action accrues. Furthermore, since subrogation is the source of contribution and subrogation does not take place until one solidary obligor "pays" the debt he owes with others, according to La.Civ.Code art. 1829(3), the cause of action does not mature or accrue until payment in excess of the virile portion is made. See Cole v. Celotex Corporation, 599 So.2d 1058, 1072 (La.1992).
In Cole, the court recognized a conflict in the jurisprudence regarding contribution claims among joint tortfeasors; specifically, it addressed the procedural right to claim contribution versus the substantive cause of action for actual contribution, which is based on subrogation to the plaintiff's rights. The court set forth the statutory history of our law on contribution claims, explaining that until the 1960 amendment to then La.Civ. Code art. 2103, a contribution claim could not be enforced unless plaintiff had first obtained a judgment in solido against joint tortfeasors. Cole, supra, at 1070. In 1954, the Third Party Practice Act was enacted to allow a defendant to join another, not yet sued, joint tortfeasor, but the courts held that a defendant still had no substantive right to enforce a claim for contribution until a judgment was obtained by the plaintiff. In 1960, La.Civ. Code art. 2103 (the present Article 1805) was amended to allow a defendant to seek to enforce contribution from another defendant who had not been sued.
In describing when the right to contribution arises, the supreme court adopted the following approach suggested by Leon L. McIntire in Comment, Contribution Among Joint Tortfeasors: Louisiana's Past, Present, and Future, 37 Tul.L.Rev. 525, 532 (1963):
[T]he substantive right of action for eventual contribution vests at the time of the delict. This construction would explain how the third party practice is available to the joint tortfeasor sued. Thus the joint tortfeasor has a right of action from the time of the tort, but the cause of action matures only on payment. Thus at the time of the delict there is vested one cause of action and two rights of action: the injured party has a right of action and cause of action in tort against the joint *720 tortfeasors; the joint tortfeasors as between themselves have a right of action or title to sue for contribution which includes the right to use the third party practice. If one of the tortfeasors pays in excess of his virile portion his vested interest or right of action matures and he acquires a separate cause of action for contribution against his fellow tortfeasor.
This reasoning does not contradict the Brown decision. The right of action for contribution in Brown did not vest at the time of the tort because the amended Article 2103 was not yet in effect. On January 1, 1961, the right of action for contribution did vest, along with the right to use the third party practice. The cause of action for contribution will not accrue or mature, however, until payment of an excess of the virile portion.
Cole, 599 So.2d at 1071-72.
A joint tortfeasor's right to contribution in similar circumstances to the case before us was recently addressed in Perkins v. Scaffolding Rental & Erection, 568 So.2d 549 La.1990).[5] In Perkins, a defendant (Conoco) was dismissed from the main demand on an exception of no cause of action, and plaintiff did not appeal. Two years later a joint tortfeasor (Safway) sought indemnification and contribution from Conoco, who filed an exception of no cause of action on the grounds it was previously dismissed from the lawsuit. The Louisiana Supreme Court recognized that the source right to claim contribution is subrogation, as set forth in La.Civ. Code art. 1804, and that the provisions of La.Civ.Code art. 1805 governed the time when a demand for contribution could be asserted and did not affect the substantive basis for seeking contribution set forth in Article 1804. That basis is subrogation to the plaintiff's rights. The court further explained, in Perkins, that:
Application of this principle is reflected in comment c to article 1805 which states that "[a]n obligor who has been released by his obligee is no longer an obligor and therefore cannot be made a third party." See also La.Civ.Code art. 1803. In a sense by failing to state a cause of action, failing to amend their petition, and then failing to appeal a dismissal with prejudice, plaintiffs tacitly released Conoco. Conoco is no longer an obligor to plaintiffs, and neither plaintiffs nor any party seeking to stand in their shoes through subrogation can have a cause of action against Conoco based on the allegations in plaintiffs' petition. Safway does not have an independent right of contribution from Conoco and is only subrogated to the rights of plaintiffs. (Footnote omitted)
Perkins, 568 So.2d at 551.
Perkins was followed by Cole. Appellant, Stone, Pigman, seeks to distinguish Perkins, arguing that Perkins concerned a dismissal on an exception of no cause of action, not prescription, and that the language in Cole confirms appellant's position that prescription could not begin running on appellant's cross-claim for contribution against Steffes until its cause of action matured at the time of judgment and payment of an excess of its virile portiona time which, as of the date of this appeal, had not yet accrued because no determination had been made on the merits as to the liability of Steffes and appellant to plaintiff.
We agree with appellant that since Steffes' exception of prescription to Stone, Pigman's demand for contribution was filed prior to the trial on the merits (and consequently prior to the time the cause of action for contribution matured), it should have been denied because it was premature. See Bergeron v. Amerada Hess Corporation, 478 So.2d 1308 (La.App. 5th Cir.1985).
Although we find that the exception of prescription was premature, we conclude that Stone, Pigman's cross-claim for contribution must be dismissed regardless, as a matter of law, based on the exception of res judicata which Steffes filed both in the trial court proceedings and in this court. See Perkins, 568 So.2d 549; Monk, 619 So.2d 890.
Appellant here argues, in opposition to the exception of res judicata as well as the exception of prescription filed by Steffes, that its *721 contribution claim against Steffes survives the dismissal of Hendrick's claim against Steffes because the dismissal was based upon prescription, a procedural basis, rather than on a substantive basis, and therefore Hendrick's claim was not extinguished. We believe that the law of subrogation makes no such distinction.[6] The law is clear that Stone, Pigman must stand in the shoes of Hendrick and can have no greater rights against the joint tortfeasor, Steffes, than does Hendrick.
In the present case, plaintiff did not appeal the court's ruling that his claim against Steffes had prescribed. Not only did he fail to appeal, but in a pleading entitled "Plaintiff's, Rodney D. Hendrick's Response to Exceptions of Prescription and Opposition to Exceptions of No Right of Action and No Cause of Action filed on Behalf of David S. Rubin and William E. Steffes," he acknowledged that
"... subsequent to the filing of the original petition in these proceedings, the Louisiana Supreme Court in the matter entitled Braud v. New England Insurance Co., 576 So.2d 466 (La.1991) held that the one (1) year prescriptive period for a legal malpractice action begins to run when the client sustains harm ... any legal representation of Rodney D. Hendrick by either William E. Steffes or David S. Rubin terminated in October of 1987 upon the conclusion of Rodney D. Hendrick's bankruptcy proceedings ... Although the plaintiff, Rodney D. Hendrick, does not agree with the reasoning of the Braud decision cited above, he acknowledges that this Court is bound by that decision of the Louisiana Supreme Court under the circumstances presented by this case."
We find that this admission, coupled with plaintiff's failure to appeal the judgment dismissing his action against Steffes, is the equivalent of a tacit release of Steffes, just as the plaintiff's failure to amend his petition to state a cause of action and failure to appeal the judgment of dismissal of his claim in Perkins constituted a tacit release. Therefore, Steffes is no longer an obligor to Hendrick and cannot be made a third party.[7]
The plaintiff, therefore, is more than "procedurally barred" from enforcing his procedural right; he has given up his substantive right. If, as appellant argues, a natural obligation exists under La.Civ.Code art. 1762 in favor of plaintiff even after his claim against Steffes was dismissed on an exception of prescription, that claim is unenforceable; plaintiff has admitted that no civil obligation survives from Steffes to him and plaintiff has effectively waived any claim he may have had.[8] He no longer has any right against Steffes, procedural or otherwise, to which appellant could be subrogated. The cross-claim for contribution must fall as a matter of law.
However, we must still determine whether Hendrick could ever assert any right against Steffes to which Stone, Pigman would be subrogated, allowing it to maintain its cross-claim against Steffes. The underlying judgment dismissing with prejudice Hendrick's *722 claim against Steffes on an exception of prescription, although final for purposes of res judicata under La.R.S. 13:4231(2), would not necessarily preclude Hendrick from filing a new petition against Steffes on a different cause of action. See Perkins, supra. [discussing La.R.S. 13:4231(2) before its 1990 amendment]. The question is, according to Perkins, if Hendrick brought a new action asserting the same allegations set forth in Stone, Pigman's cross-claim against Steffes, would that petition be dismissed on the basis of res judicata?
Our review of the record indicates that Hendrick's original allegations against Steffes were that Steffes undertook legal duties to Hendrick, which included the duty to oversee and monitor Stone, Pigman's handling of the RICO lawsuit. Stone, Pigman's cross-claim against Steffes, through several amendments, claimed that he failed to take steps to prevent a sale of the stock; to preserve or otherwise protect Hendrick's claims; and to advise Stone, Pigman of the discrepancy between the minute entry and the order approving the sale of the PFC stock.
Since Hendrick failed to appeal the final judgment dismissing his action against Steffes, it is difficult to see how he could ever assert a new claim against Steffes which would be enforceable; in any event, Stone, Pigman's cross-claim is clearly based upon the same cause of action as that which Hendrick initially assertedSteffes' breach of a legal duty to Hendrick to properly oversee the RICO action. Since the sole source of contribution is subrogation, as we have discussed, and Stone, Pigman's cross-claim was based on a breach of the same legal obligation upon which Hendrick's original petition against Steffes was founded, Stone, Pigman is precluded by res judicata from maintaining the cause of action against Steffes which is set forth in its cross-claim.
For the reasons set forth, we reverse the judgment sustaining the exception of prescription filed by Steffes against the cross-claim of Stone, Pigman but render judgment sustaining Steffes' exception of res judicata. Accordingly, Stone, Pigman's cross-claim against Steffes is dismissed. All costs of this appeal are assessed against Stone, Pigman.
PARRO, J. concurs.
REVERSED AND RENDERED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Plaintiff in the malpractice action, Rodney Hendrick, is not a party to this appeal. Hendrick did not appeal the trial court's judgment against him dismissing his claims against both Steffes and defendant David Rubin.

William E. Steffes has urged on appeal his own exceptions of res judicata, no cause of action, no right of action, and prescription as to the Stone, Pigman cross-claims, in order to protect the record. We need not address the exceptions of no right of action and no cause of action in this opinion as we find that Stone, Pigman's third party demand asserting a cross-claim, is barred by res judicata, which holding shall be discussed subsequently in this opinion, as well as the exception of prescription.
[3] On January 11, 1995, the district judge rendered reasons for judgment on a May 11, 1994 hearing on a motion for summary judgment and exception of prescription filed by Stone, Pigman. She found that plaintiff's claim against Stone, Pigman had not prescribed "because La.R.S. 9:5628 [sic] does not provide a delayed effective date, a grace period to bring vested claims, or any expression of an intent to deprive someone of their right to invoke the contra non valentem doctrine. Hendrick's claim was timely filed under the law as it existed at the time. This court is of the opinion that plaintiff's claim vested prior to the enactment of La.R.S. 9:5605. Further, plaintiff's claim was suspended during his representation by defendants under the doctrine of contra non valentem because of the `continuous representation rule' enunciated by the Louisiana Supreme Court in Lima v. Schmidt, 595 So.2d 624 (La.1992)." No judgment to this effect appears in the record before us, although we understand that a judgment was ultimately signed on January 22, 1996, conforming to these reasons. Stone, Pigman argues on appeal that if prescription was interrupted as to Stone, Pigman, it must be interrupted as to Steffes. The judgment from which Stone, Pigman does appeal is intertwined with the district court's ruling that the plaintiff's claim against Stone, Pigman has not prescribed. However, the question of whether Hendrick's main demand against Stone, Pigman has prescribed is not before us.

Stone, Pigman has not appealed from the judgment dismissing plaintiff's main demand against Steffes, arguing that since plaintiff did not appeal that ruling, there is no requirement for Stone, Pigman to do so, and that to do so would be inconsistent with its position.
[4] Appellant has not briefed the issue of the cross-claim for indemnity, but insists in oral argument to this court that the claim has not been abandoned. We note here that the claim for indemnity is founded upon unjust enrichment, or quasi-contract, rather than subrogation. Lebleu v. Southern Silica of Louisiana, Inc., 554 So.2d 852, 859 (La.App. 3rd Cir.1989), writ denied, 559 So.2d 489 (La.1990). We do not discuss the issue, however, since in numerous briefs filed in this court, appellant has failed to address its claim for indemnity.
[5] See also Monk v. Scott Truck & Tractor, 619 So.2d 890 (La.App. 3rd Cir.1993).
[6] We acknowledge the contrary language in Ferguson v. Lankford, 374 So.2d 1205 (La.1979), where, in dicta, the court acknowledged a tortfeasor's right to proceed in contribution against a joint tortfeasor although the plaintiff's claim against that tortfeasor had prescribed. Relying on Brown v. New Amsterdam Casualty Co., 243 La. 271, 142 So.2d 796 (1962), the court stated that "[a]lthough the injured party's right and the joint tortfeasors' obligations to the injured party arise at the same time, the right of one joint tortfeasor to contribution from the other does not arise until after judicial demand is made on one of the solidarily obligated tortfeasors." We believe this language has been impliedly overruled by the Cole decision.
[7] La.Civ.Code art. 1888 states that remission of a debt by an obligee extinguishes the obligation, and the remission may be tacit or express. See Illinois Central Gulf Railroad Co. v. Deaton Inc., 581 So.2d 714 (La.App. 4th Cir.), writ den. 588 So.2d 1117 (La.1991). Although Hendrick's admission may not constitute a formal remission of Steffes' debt to him, it may be that it functionally operates in much the same manner.
[8] We note that La.Civ.Code art. 1762, discussing examples of circumstances giving rise to a natural obligation, states:

"(1) When a civil obligation has been extinguished by prescription ..." [emphasis supplied]. This language would imply that prescription is more than a procedural bar, but an actual mode of extinguishment of an obligation. See also La.Civ.Code art. 3447, comment (b).