JiGASKINS, Judge.
The plaintiff, Bopp Salon Services, Inc., appeals a trial court judgment sustaining a peremptory exception of prescription and dismissing its suit. We affirm.
FACTS
In June 1994, Bopp Salon Services, Inc., filed a petition in the 26th Judicial District Court, Bossier Parish, to enforce a foreign judgment obtained by Bopp against Jere J. Causey in Arkansas. The Bossier Parish Clerk of Court apparently failed to notify Causey of the proceeding in accordance with the provisions of the Enforcement of Foreign Judgments Act, specifically La. R.S. 13:4243.[1]
In March 1995, Bopp was served with Cau-sey’s petition to annul Bopp’s judgment. In June 1995, a judgment was rendered in Cau-sey’s nullity action enjoining the garnishment that Bopp had commenced in the enforcement action. Also, in June 1995, Causey filed for bankruptcy; Bopp subsequently filed a proof of claim in those proceedings. In May 1996, Causey filed an objection to Bopp’s claim in the bankruptcy case, and in December 1996, the bankruptcy judge granted Causey’s objection, declaring Bopp to be an unsecured creditor. The bankruptcy judge based his finding of an unsecured claim on “the failure of the Bossier Parish Clerk of Court to notice Mr. Causey pursuant to Louisiana law. ...”
Bopp then initiated the instant suit by filing a petition for damages against the Bossier-Parish Clerk of Court on June 25, 1997. The clerk responded with a peremptory exception of prescription which was sustained by the trial court in August 1997. This appeal followed.
l2The issue on appeal concerns when prescription for Bopp’s alleged action began to run. In particular, since La. C.C. art. 3492 provides that delictual actions are subject to a liberative prescription of one year that commences to run from the day injury or damage is sustained, the issue concerns when injury or damage was sustained by Bopp. Bopp argues that it did not sustain damage until the bankruptcy judge issued the ruling regarding the priority of Bopp’s claim. On the other hand, the Clerk of Court argues that this case is not distinguishable from Rayne State Bank and Trust Company v. National Union Fire Insurance Company, 483 So.2d 987 (La.1986), and that Bopp sustained damages when it was forced to defend Causey’s nullity action that was commenced in March 1995. For the reasons set forth below, we agree with appellee’s position, and we affirm the trial court’s judgment.
DISCUSSION
In Rayne State Bank, supra, a bank brought a legal malpractice action alleging that it was damaged as the result of fatally defective mortgages drafted by one of the defendant attorneys and reviewed by the other. The district court sustained the defendants’ exceptions of prescription, finding that more than a year had elapsed between the date the bank received notice of potentially fatal defects in the mortgages and the date the bank filed a third party complaint in bankruptcy court against one of the defendants. The court of appeal affirmed, but the *900 supreme court reached a different conclusion. In concluding that the plaintiffs suit was not barred by the prescription of one year, the court stated:
In Louisiana prescription does not begin to run until damage is sustained. The tort prescription provisions in former C.C. 3537 were reenacted without substantive change in 1984 as C.C. 3492. C.C. 3537 provided that the one year prescriptive period for delictual actions runs “from [the day] on which the injurious words, disturbance, or damage were sustained.”
[ aMere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of action — both a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act. Thus, until damage was “sustained” by the bank, it had no cause of action, and prescription did not commence to run on the date the bank received notice of possibly fatal defects in the mortgages.
Damage was not sustained by the bank by virtue of the mere existence of defects in the mortgages. At this point, the possibility of damage to the bank was merely speculative, uncertain and contingent on the possibility of an attack on the validity of the mortgages by a third party, or on the possibility that the debtors would declare bankruptcy. In the event that neither of these contingencies occurred, and the debtors continued payment of their indebtedness, no harm at all would have resulted to the bank.
[[Image here]]
In this case damage to the bank arising from the defective mortgages was not susceptible of ascertainment until the validity of mortgages was attacked. Although the full extent of the damage was not yet known at that time, the fact that some damage would occur was known, since the bank had to defend against the attack.
[[Image here]]
Regardless of the actual validity or invalidity of the mortgages, the debtors in possession attacked them in the adversary proceedings in bankruptcy court because of the existence of the defects, and Rayne State Bank settled the claim against it because of the fear of the total invalidation of the mortgage caused by the existence of the defects. This attack, which Rayne State Bank was forced to defend, was direct damage to the bank resulting from the existence of the defects, regardless of any future determination of further damage resulting from invalidity of the mortgages. It was from the date of this damage that damage was “sustained” in the meaning of C.C. 3537 (new C.C. 3492).
(Citations omitted.)
In Braud v. New England Insurance Company, 576 So.2d 466 (La.1991), the Louisiana Supreme Court in a legal malpractice action followed its holding in Rayne State Bank and concluded that while the plaintiff did not sustain damage by virtue of the mere existence of deficiencies in the work product of his former ^attorney, a cause of action arises before a client sustains all, or even the greater part, of the damages occasioned by his attorney’s negligence. The court stated that any appreciable and actual harm flowing from the attorney’s negligent conduct establishes a cause of action upon which the client may sue, and that- Braud sustained appreciable and actual harm when the validity of his right or asset was attacked by a third party because of the alleged negligence of his former attorney and Braud was compelled to incur and pay attorney’s fees, legal costs and expenditures.
Likewise, in Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992), the supreme court held that prescription began to run when the plaintiff incurred substantial accountant’s and attorney’s fees in investigating and informing himself of deficiencies in a tax return, and it was not necessary that complete damages be ascertained or that formal proceedings be initiated against the plaintiff by the Internal Revenue Service.
Applying the legal principles discussed above to the facts of the instant case, we conclude that the one-year prescription peri *901 od for Bopp’s alleged cause of action against the Bossier Parish Clerk did not begin to run when the clerk failed to mail the notice in accordance with La. R.S. 13:4243; however, prescription was triggered when Bopp was forced to defend Causey’s nullity action through which Causey attacked Bopp’s garnishment in the enforcement action. The attorney’s fees and related expenditures incurred by Bopp in this regard were the direct result of the clerk’s alleged negligence. This was appreciable harm that triggered the running of the prescriptive period, even before Bopp sustained all, or even the greater part, of the damages.
Inasmuch as Bopp sustained appreciable harm at this point, we must reject Bopp’s argument on appeal that prior to the bank-ruptey judge’s ruling, Bopp had Isyet to lose anything of value and that Bopp’s damage emanated from the status of being an unsecured creditor instead of a secured creditor.
CONCLUSION
For the reasons set forth above, we affirm the trial court’s decision at appellant’s costs.
AFFIRMED.

. In relevant part, this statute provides:
B. Promptly upon the filing of the petition, the foreign judgment, and the affidavit, the clerk shall send a notice by certified mail to the judgment debtor at the address given and shall make a note of the mailing in the record.