SAVOIE, Judge.
Plaintiffs Pelto Oil Company (Pelto), [in # 84-CA-0742], South Coast Corporation (South Coast), [in # 84-CA-0743], Exchange Oil and Gas Corporation (Exchange), [in # 84-CA-0744], and Chevron Oil Company (Chevron), [in # 84-CA-0745], filed suit seeking a refund of Louisiana severance taxes paid under protest involving natural gas severed during the period from January 1, 1974, to July 31, 1974. The plaintiffs, as sellers of natural gas, paid under protest the difference between the standard severance tax found in La. R.S. 47:633(9) and the lower severance tax found in La.R.S. 47:633.1(B) for the first seven months of 1974. After the payment under protest, the plaintiffs filed suit to recover the taxes paid as governed by La. R.S. 47:1576.
The plaintiffs claim that they should not be forced to pay the tax rate set out in La.R.S. 47:633(9) of 7.0 cents per thousand cubic feet. Rather, plaintiffs argue under La.R.S. 47:633.1(B), in effect for the period in question, that they are only required to pay 4.0 cents per thousand cubic feet. The defendant, Collector of Revenue [now Department of Revenue and Taxation] (DORT), opposed the refund, claiming that plaintiffs did not fall within the purview of La.R.S. 47:633.1(B).
All parties moved for summary judgment on the basis of a joint stipulation of facts, along with attached exhibits. The trial court found that the plaintiffs were exempt from paying the higher tax rate and therefore ordered that the refunds be made. We affirm.
From January 1, 1974, to July 31, 1974, La.R.S. 47:633.1(B) read:
Notwithstanding the provisions of R.S. 47:633(9) to the contrary, the tax on gas severed from the soil or water and sold under a written agreement in existence prior to November 25, 1973, which requires the seller to pay and bear 50% or more of the severance tax on gas, shall not exceed 4.0 cents per thousand cubic feet during the existence of such contract. Such written agreements shall be filed with the Collector of Revenue not later than February 1, 1974, otherwise this subsection shall not apply to such agreement.
The disputed taxes arose from sales of natural gas during ■ that period of time. These sales were made pursuant to a number of different contracts. We shall look to each contract to determine the applicability of La.R.S. 47:633.1(B).
GC-46
GC-46 is a gas contract between Chevron, as seller, and Southern Natural Gas Company, as buyer, dated July 31, 1951. This contract contains an “area rate” or “most favored nation” clause, which allows for an adjustment in the contract price based upon the going price contained in similar contracts entered into between other buyers and/or sellers. Also contained in the contract is Article 9, a provision entitled “Payment and Reimbursement of Taxes.” Under section 1 of this article of the contract, the parties agree that the seller shall pay .3$ and the buyer shall pay 1$ of the initial 1.3 c per thousand cubic feet (Mcf) of severance tax. The parties then agree that each shall bear 50% of the amount of tax over 1.3c per Mcf. Under section 2 of this article, either party may cancel the contract upon six months notice if the aggregate of all taxes shall amount to 5c or more per Mcf. Under the facts of this case, the contract was not cancelled, and the seller then paid the amount of the tax over 5c per Mcf. Therefore, under the contractual provisions and the actions of the parties, the responsibility for taxes was shared in the following manner:
SELLER BUYER
(a) The first 1.3$ .30 1.00
(b) next 3.7$ (i.e., 1.3$ to 5$) 1.85 1.85
(c) amount above 5$ (to 7$) 2.00 ...
4.15 (59.29%) 2.85 (40.71%)
The ceiling rate for natural gas is apparently set by the Federal Power Commission (FPC). When severance taxes are increased by the local governing authority *951 the FPC allows an increase in the sales price equal to Vs’s of the tax increase. All parties have stipulated that Chevron filed for an increase in the gas sales price. The stipulation was to the effect that the basis of the increase was the “most favored nations” clause in the contract and not on the basis of the tax reimbursement clause.
DORT argues that since the FPC allows an increase in the sales price when the severance tax is raised, the seller does not “bear” the added tax, but rather the increase in the tax is passed on to the buyer. This argument, however, fails to acknowledge the provisions of the contract between the buyer and seller. This contract is the law between the parties. Under this contract, the buyer and seller agreed that the seller would bear the majority of the severance tax. Also, DORT stipulated that the increase in the sales price was based on the “most favored nation” clause not because of the increase in the severance tax.
DORT also argues that the statute is a tax exemption, and the plaintiffs must prove they are within the class of persons the legislature sought to exempt. An exemption from taxation is a privilege which must be clearly and unequivocally established. McNamara v. Electrode Corporation, 418 So.2d 652 (La.App. 1st Cir.1982), writ denied, 420 So.2d 986 (La.1982). In this case we find that the seller has met the burden of establishing that they are within the exemption. They have made an affirmative showing that they had contractually agreed with the buyer to be responsible for over 50% of the severance tax.
Therefore, we find that La.R.S. 47:633.-1(B) applied to the gas sold under GC-46 from January 1, 1974, to July 31, 1974.
GC-248
This is a gas contract between Chevron, as seller, and Texas Gas Transmission Corporation, as buyer, dated June 1, 1967. This contract contains a tax reimbursement provision in Section 9. On April 6, 1972, the contract was amended to include plaintiffs Pelto, Exchange, and South Coast as sellers along with Chevron.
Under the provisions of Section 9 of this contract, the sellers and buyer agreed that the seller would be responsible for the first 2.3$ per Mcf tax. The parties also agreed that the buyer would be responsible for 75% of any increase of the tax rate up to another 2$ per Mcf. Any further increase in excess of this 2$ per Mcf was to be shared equally by the parties. The responsibility for taxes was therefore to be shared in the following manner:
SELLER BUYER
First 2.3* 2.30
Next 2.0* (i.e., 2.3 to 5.3») .50 1.50
Next 2.7* (i.e., 5.3* to 7.0t) L35 U¡5
4.15 (59.29%) 2.85 (40.71%)
Under the terms of this contract, the sellers were obligated to pay 4.15$ per Mcf as severance tax. Once again the price increase granted by the FPC was made pursuant to the “area rate” clause and not on the basis of the tax reimbursement clause. We therefore find that the plaintiffs have carried the burden of showing that they are within the exemption. La.R.S. 47:633.1(B) applied to the gas sold under GC-248 from January 1, 1974, to July 31, 1974.
GC-176
This is a gas contract between Chevron (as assignee of Cities Services Company), as seller, and Louisiana Intrastate Gas Company, as buyer, dated August 1, 1963. This contract contained a provision in Article V which covers tax reimbursement.
Under Article V, the seller agreed to pay all severance taxes up to 2.3$ per Mcf. The parties then agreed that if the amount of tax would exceed 2.3$ per Mcf, the seller would pay the tax, and the buyer would reimburse the seller for 50% of the increase. The article has a final provision which calls for the buyer to inform the seller when the gas was sold for uses which would make the gas tax exempt. Under the provisions of this contract the responsibility for the taxes would be shared:
SELLER BUYER
First 2.3$ 2.30 -
2.3 - 7.0$ (i.e., 4.7$) 2¿35 ½35
4.35 (66.43%) 2.35 (33.57%)
*952 Clearly, the seller has shown that he has agreed to carry over 50% of the tax. We find that the seller has affirmatively shown that the exemption covers this contract. Therefore, La.R.S. 47:633.1(B) applied to the gas sold under GC-176 from January 1, 1974, to July 31, 1974.
GC-18
This is a contract between Chevron, as seller and Texas Eastern Transmission Corporation, as buyer, dated June 8, 1967. The contract contains a tax reimbursement clause in Section IX(2).
Under the provisions of Section IX(2), the parties agreed that the buyer’s obligation to reimburse the seller for taxes shall be limited to seven-eights of two cents (⅛ of 2$) per Mcf. Under the language of this provision the responsibility for taxes would be shared:
SELLER BUYER
First 2.00 .25 1.75
Next 5.0« 5.00 .
5.25 (75%) 1.75 (25%)
Once again, the parties have agreed that the seller shall be responsible for over 50% of the severance taxes. By making this showing, the seller has established that the exemption applies to gas sold under GC-18 from January 1, 1974, to July 31, 1974.
GC-251 & 252
There are two contracts between Chevron as seller and Texas Gas Transmission Corporation as buyer. GC-251 is dated August 15, 1966, and GC-252 is dated June 1, 1967. Section 9 of both contracts is entitled “Tax Reimbursements.”
Section 9.1 defines “Seller’s tax” to include severance taxes. “Additional tax” is defined to be any tax above 2.3$ per Mcf. Under Section 9.1, the parties agreed that the buyer would be responsible for seventy-five percent (75%) of the “additional tax” up to two cents (2$) per Mcf, plus fifty percent (50%) of any “additional tax” in excess of two cents (2$) Mcf. Under this contractual provision, the parties have agreed to share the responsibility for severance taxes in the following manner:
SELLER BUYER
First 2.3c 2.30 .
Next 2.0c (i.e., 2.3c to 4.3c) .50 1.50
Next 2.7c (i.e., 4.3c to 7.0c) 135 135
4.15 (59.29%) 2.85 (40.71%)
DORT argues that the evidence does not show that the parties intended the seller to bear the initial 2.3$ per Mcf severance tax. DORT contends that since Section 9.1 only addresses itself to the division of the “additional tax” in excess of the 2.3$ per Mcf rate, then we can assume that the buyer may have been the party paying the initial 2.3$ per Mcf.
We find this argument to be unpersuasive. By labeling the initial 2.3$ per Mcf rate as “seller’s tax”, we feel the parties have clearly shown that their intention was for the seller to be responsible for this portion of the tax. This language is clear and unambiguous, and therefore we find that the seller has carried the burden of showing that the gas sold under GC-251 & 252 from January 1, 1974, to July 31, 1974, is governed by La.R.S. 47:633.1(B).
CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs in the amount of $3,407.57 to be paid by the Department of Revenue and Taxation.
AFFIRMED.