537 So.2d 783 (1989)
Margaret NORWOOD, Appellant,
v.
Roy M. FISH, Appellee.
No. 20222-CA.
Court of Appeal of Louisiana, Second Circuit.
January 18, 1989.
Writ Denied March 10, 1989.
*784 Johnston & Thornton by James J. Thornton, Jr., Shreveport, for appellant.
Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Shreveport, for appellee.
Before HALL, MARVIN, and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
On July 31, 1984 the plaintiff, Margaret Norwood, filed a petition alleging legal malpractice against the defendant, attorney Roy M. Fish. The trial court sustained the defendant's plea of prescription and dismissed the plaintiff's suit with prejudice. The plaintiff appeals from this adverse judgment. We affirm.
The plaintiff and the defendant have known each other since 1948 and were related through the marriage of the plaintiff to Guy Norwood, the defendant's father-in-law. The defendant was and is presently married to Guy Norwood's daughter, Ann.
The plaintiff's marriage to Guy Norwood on February 2, 1961 was her second marriage, having survived her first husband, Curtis McAdoo, who died in 1960. The defendant represented the plaintiff in settling the succession of her first husband.
The plaintiff contends that she conferred with the defendant prior to her marriage to Guy Norwood for the purpose of obtaining legal advice on maintaining her earnings and acquisitions as separate property during the duration of her marriage to Mr. Norwood. The plaintiff's contention is that the defendant erroneously advised her "merely to keep the properties in her name" and that he never rectified his mistake during her marriage to Mr. Norwood.[1] *785 She contends that as a result of her reliance on defendant's advice rents, interest and properties acquired by her during her marriage became community property to which the heirs of Guy Norwood validly made claim.[2] The defendant denied he was ever requested to render any advice to plaintiff concerning her separate estate.
On November 1, 1982, Guy Norwood died. The defendant told the plaintiff he could not represent her in her husband's succession as he was married to the deceased's daughter and he would represent his wife, Ann.
On November 8, 1982, the defendant filed a "petition for restraining order and rule" in the succession proceedings of Guy Norwood. By this rule the defendant, representing the heirs of the succession, sought to prove certain property which the plaintiff claimed was her separate property was in fact property of the community in which the heirs had interest. The petition for the show cause order contained the following allegation with regard to the order sought:
"The issuance of a rule ordering directing and requiring the surviving spouse to appear and show cause if any she has, why all property she acquired or which came into her possession, except for decedent's separate property subsequent to her marriage to the decedent should not be adjudged and decreed to be community property." [emphasis added]
On December 2, 1982 the defendant took the plaintiff's deposition. During the course of the deposition, the plaintiff and her counsel Cecil Campbell retreated for a few moments for counsel to explain to her the distinction between separate and community property. At the trial of the exception *786 of prescription the plaintiff admitted she retained Mr. Campbell prior to December 2, 1982 in order to defend her rights to the disputed property. As basis for sustaining the exception of prescription, the trial court noted in reasons for judgment that at the time of the deposition on December 2, 1982, the plaintiff "understood that the deceased's children were contending that certain property she claimed was separate was actually community property."
The plaintiff's action for legal malpractice, which she filed on July 31, 1984, is an action in tort and is governed by the one year prescriptive period of LSA-C. C. art. 3492. Rayne State Bank and Trust Co. v. National Union Fire Ins. Co., 483 So.2d 987 (La.1986); Malone v. Wright, 525 So.2d 13 (La.App.3d Cir.1988); Law v. Mayeux, 527 So.2d 37 (La.App.3d Cir.1988). The one year prescriptive period commences when the plaintiff becomes aware of the alleged negligent acts or omissions of the defendant-attorney and of the fact that he would sustain damage or loss by reason thereof. Gifford v. New England Reinsurance Corp., 488 So.2d 736 (La.App. 2d Cir.1986). Prescription does not begin to run until a party acquires knowledge of those facts upon which his claim is based unless his failure to know them is willful, negligent, or unreasonable. Griffin v. Kinberger, 507 So.2d 821 (La.1987). Under the controlling rule of Griffin, the proper focus is on the reasonableness of the tort victim's action or inaction.
The plaintiff stated in her testimony at the trial of the exception she did not learn she had a malpractice action against the defendant until February 25, 1984, when the trial court ruled the property in controversy was community property and not plaintiff's separate property. At that time plaintiff contends her counsel Cecil Campbell told her she might have a malpractice action, and on his advice she retained her present appellate counsel James Thornton. Because the plaintiff filed suit in July of 1984, within one year of the trial court's February ruling, she urges her cause of action was asserted timely.
Plaintiff's argument is predicated on the legal assumption that no damages were sustained under the ambit of LSA-C. C. art. 3492 until the adverse February judgment defined her loss and that as a factual matter she had no notice prior to the trial court's ruling that a malpractice action was available to her. Plaintiff's first conclusion is in error in light of the reasoning of Rayne and the second conclusion is simply not supported by the record. Under the rationale of Rayne, damage is sustained under LSA-C.C. art. 3492 and prescription commences to run where the plaintiff is forced to defend an attack on his rights through adversary proceedings. It is at this point that plaintiff sustains damage sufficient to support accrual of a cause of action for legal malpractice against the defendant-attorney. A determination of the actual loss or exact extent of the plaintiff's damage sustained as a result of the malpractice is not required to trigger the commencement of prescription.
Rayne and its progeny have noted that necessarily a prerequisite to the assertion of the claim for damage which results in the commencement of the prescription period, is a finding that the plaintiff knew or should have known of the existence of facts that enable him to state a cause of action. Olivier v. National Union Fire Ins. Co., 499 So.2d 1330 (La.App.3d Cir. 1986); Gifford v. New England Reinsurance Corp., supra; Malone v. Wright, supra. The supreme court elaborated on this jurisprudential rule in Griffin v. Kinberger, supra. The standard imposed in Griffin is that of a reasonable man. This standard is designed to establish a rule that any plaintiff who had knowledge of facts that would place a reasonable man on notice that malpractice may have been committed shall be held to have been subject to the commencement of prescription by virtue of such knowledge even though he takes the position that he did not know because these facts were not sufficient to trigger such knowledge in his mind.
The record reflects this plaintiff was put on notice of facts forming the basis for a potential legal malpractice action *787 well over a year before plaintiff filed her suit. The petition for restraining order and rule filed November 8, 1982, sought a rule directing the plaintiff to show cause why all property she acquired after her marriage to the decedent should not be decreed community property. This pleading at the very least established the heirs of the decedent intended to dispute the ownership of certain property possessed by the plaintiff.
At the December deposition the plaintiff was repeatedly asked questions about the source of funds used to purchase the disputed properties in order to establish which property belonged to the succession. The plaintiff's answers were rambling and unresponsive to the issue posed by the inquiry.
At the trial of the exception the plaintiff again gave evasive answers in response to inquiries from defense counsel designed to pinpoint the prescription commencement date. However, the following exchange occurred in reference to the time period preceeding the December 1982 deposition:
Q. Right. But what you said was your estate and what they claimed was your estate, that's why you had to get another lawyer, wasn't it?
A. Yes.
At another point at the trial of the exception of prescription appellant gave the following testimony which is relevant to her understanding of the issues involved in the November 8, 1982 rule.
Q. But what was put at issue in that lawsuit, wasn't it? That's what the judge had to decide, whether what you thought was separate property was actually separate property or whether it was community property?
A. Well, that's what they were after. [emphasis added]
A plaintiff under Griffin may not escape the commencement of prescription by attempting to establish that his ability to comprehend and evaluate the facts is something less than that possessed by a reasonable man. This plaintiff is not entitled to hide behind any such contention in light of the evidence having established that she is an astute businesswoman with rather wide experience in transactions involving immovable property and the complexities with the installment acquisition of same.
The appellant knew, according to her asserted malpractice claim, that she had been advised that all which was necessary to maintain property acquired by her during the second marriage as separate property was to keep the cash in an account in her name alone and to have her husband sign her deeds of acquisition. She testified as follows in the prescription hearing:
A Well, Roy said my property was my property all along as he represented me. He said my property was my property and I asked him to fix up where my property would be my property and he said all I had to do was to keep separate bank accounts and for Guy Norwood to sign my deeds. And I even asked him this before we married when he prepared a deed.
The evidence contained in the December 2, 1982 deposition together with interrogatories directed to appellant and answered by her more than one year before her suit was filed and in the copy of deeds contained in this record reflect that the appellant made a strong effort to follow procedures pursuant to advice she allegedly received from the defendant necessary to assure that her cash and property would legally be categorized as her separate estate. Because the appellant had followed these procedures the red flag of malpractice must necessarily have been waved in front of her eyes when the November 8, 1982 petition was filed against her which so clearly was directed in an effort being asserted by the defendant Roy Fish to show that property acquired by the appellant and in her possession subsequent to her marriage to Norwood was all community property.
This petition told the plaintiff that she may not have received sound legal advice on the correct procedure to follow to have *788 the property acquired by her during a marriage qualify as separate property.
The 199 page December 2, 1982 discovery deposition which focused on the manner in which plaintiff had maintained her bank account and acquired her property would indicate she had not received the correct legal advice on how to have the property acquired by her during the marriage belong to her separate estate because the discovery deposition was used as a tool by the defendant to have the property acquired by the plaintiff during her marriage to Norwood declared to be community property.
Interrogatories filed February 8, 1983 and answered March 21, 1983 and interrogatories filed April 6, 1983 and answered May 12, 1983 all reflect plaintiff stated she maintained bank accounts in her name alone, wherein she placed her rents and interest income along with some insurance money she received from the death of her first husband with which funds she acquired property in her name alone. The fact that the plaintiff-in-rule was seeking and obtaining this information from her necessarily gave her knowledge that the manner in which she was handling the bank account and deeds supported the plaintiff-in-rule's contention that all the property acquired by her during the marriage was in fact community. She knew that she was following the procedure in connection with the bank accounts and deeds allegedly advised by Roy Fish as the method in which to keep the property separate. She therefore had knowledge of facts which should have indicated to her as a reasonable person that the advice she allegedly obtained from Fish was deficient because although she had followed it, Roy Fish as representative of the heirs was asserting that these procedures resulted in the property being community. The interrogatories and the responses to them were all filed in this record more than one year before the malpractice action was instituted. It therefore follows plaintiff had the facts to indicate she may have had a malpractice action more than a year before suit was filed and same was therefore prescribed.
We conclude the prescriptive period commenced no later than the December 2, 1982 deposition. Even in absence of this discovery deposition, the plaintiff's responses to the February 8, 1983 interrogatories made on March 21, 1983 and her responses to the April 8, 1983 interrogatories made on May 12, 1983 further establish her knowledge of malpractice facts more than one year prior to the institution of her suit. The plaintiff did not institute her suit for legal malpractice against the defendant until July of 1984, well over a year after the commencement date of prescription. The trial court properly sustained the defendant's exception of prescription in light of the reasoning set forth in the supreme court decisions of Rayne and Griffin.
For these reasons the judgment of the trial court is affirmed. All costs assessed against the plaintiff-appellant.
AFFIRMED.
NOTES
[1] At the time of plaintiff's marriage to Guy Norwood in 1962 plaintiff could have maintained her separate estate by executing a declaration of paraphernality or entering into an antenuptial agreement. LSA-C.C. art. 2386 and LSA-C.C. art. 2332 were then controlling and provided as follows:

Art. 2386 The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled.
If there is no community of gains, each party enjoys, as he chooses, that which comes to his hand; but the fruits and revenues which are existing at the dissolution of the marriage, belong to the owner of the things which produce them.
Art. 2332 The partnership, or community of acquets [acquets] or gains, needs not to be stipulated; it exists by operation of law, in all cases where there is no stipulation to the contrary.
But the parties may modify or limit it; they may even agree that it shall not exist.
Both articles are now reincorporated in other codal provisions. See LSA-C.C. arts. 2336, 2338, and 2339 for the substance of article 2386; see LSA-C.C. arts. 2327, 2328, 2339, and 2330 for the substance of article 2332.
[2] Plaintiff's malpractice petition contains the following allegations:

5.
There then existed two ways in which petitioner could have continued her business after remarriage and kept her assets separate. A contract between petitioner and her husband-to-be could have been made prior to marriage. Even after remarriage under Article 2386 of the Louisiana Civil Code, petitioner could have put of record in the parishes where she did business a declaration of paraphernality which would have by operation of law kept her properties and earnings separate. These legal maneuvers were known to the vast majority of attorneys and considering defendant's length of time as a practitioner, must have been or should have been known to defendant.
6.
Notwithstanding this, defendant advised petitioner merely to keep properties in her name, despite his knowledge that affirmative action on petitioner's part was required to maintain her income from her properties separate from the community. Petitioner relied on this advice and, indeed, continued employing defendant as her attorney. Defendant, despite his knowledge of the large number of real estate transactions taking place involving petitioner, did not alter his advice or tell her what actions were available for the protection of her properties.
9.
The outcome from relying on defendant's legal advice has been financially disastrous to petitioner. Relying on defendant's legal advice she used rental income and profits to acquire other properties, not knowing these funds were community. This commingling of funds made subsequent purchases community which in turn gave the heirs of Guy Norwood claims for half ownership of these properties.