597 So.2d 1060 (1992)
Ervin Ray TEAGUE, Plaintiff-Appellant,
v.
Leroy SCOTT, New England Insurance Company and Home Insurance Company, Defendants-Appellees.
No. 23410-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1992.
Rehearing Denied May 7, 1992.
*1061 Patricia N. Miramon, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Shreveport, for defendants-appellees.
Before SEXTON, LINDSAY and STEWART, JJ.
SEXTON, Judge.
Plaintiff appeals the granting of defendants' peremptory exception of prescription in a legal malpractice lawsuit and also complains of the district court's supplying of a "partial" exception of no cause of action to his claim of "possibly" having lost a products liability claim against the manufacturer of a prescription drug which plaintiff had used. We affirm.
Plaintiff originally consulted defendant Leroy Scott, a Shreveport attorney, regarding a worker's compensation claim against International Paper Company (IP) based on an accident in which plaintiff was involved at IP's paper mill in Springhill in 1979. Scott testified that he did not generally handle worker's compensation cases, except under the most unusual circumstances, so he referred the matter to B.J. Woods, a one-time Shreveport attorney who no longer practices law.
Woods filed suit on plaintiff's behalf on February 15, 1980, seeking compensation benefits, medical expenses, penalties, attorney fees, and costs of the proceedings. On *1062 or about August 21, 1980, Woods filed a motion to withdraw as counsel of record.[1] The next day, the district court granted the motion and gave plaintiff 15 days to obtain new counsel.
Approximately one and one-half years elapsed without new counsel enrolling for plaintiff. Counsel for IP filed a motion to dismiss plaintiff's case on February 1, 1982, on the basis that plaintiff had failed to enroll new counsel. That motion was granted. On March 24, 1982, Scott and Harold D. Vaught, who was also a Shreveport attorney, filed a motion to enroll as co-counsel of record. That motion was opposed by IP on the basis that the case had been dismissed.
In the meantime, Scott and Vaught, who shared office space but were not partners, filed a joint motion to appeal the dismissal of plaintiff's case. In Teague v. International Paper Company, 420 So.2d 522 (La. App.2d Cir.1982), this court reversed and remanded the matter to the district court for further proceedings.
According to Scott's testimony, Vaught continued to handle plaintiff's case until Vaught died, at which time, Scott fell "heir" to the case.
In April of 1987, Scott wrote a letter to plaintiff regarding a settlement offer in the compensation case. Under the terms of the offer, IP was willing to settle the case for $5,000, but Scott indicated that he might be able to get as much as $7,500.
Plaintiff wrote back to Scott in June 1987, some two months later, rejecting the offer as insufficient. On June 12, 1987, Scott wrote to plaintiff to advise that he was withdrawing as his counsel of record. Thereafter, although plaintiff consulted with several lawyers concerning the matter, no one enrolled as his attorney of record. According to plaintiff's testimony, though, Scott continued to handle the matter for him and the evidence indicates that there was communication between them regarding the matter, but Scott denied that he was "counsel" after his withdrawal.
In spring of 1988, plaintiff contacted Scott at Scott's request to obtain an appointment regarding another settlement offer. On April 6, 1988, plaintiff met with Scott, and Scott recommended that plaintiff accept an offer by IP to settle the case for $6,000. During the course of that meeting, Scott indicated to plaintiff that he believed the compensation case had been legally abandoned by the passage of five years with no action having been taken in the case. Thus, plaintiff needed to accept IP's offer, which Scott characterized as a "gift" due to the legal abandonment of the suit.
The next day, April 7, 1988, plaintiff called counsel for IP and requested $10,000 to settle the case. Plaintiff told IP's counsel, "in no uncertain terms," that Scott was not his attorney. IP's counsel testified that he was aware that Scott had withdrawn from the case, but that he would continue to pass messages on to plaintiff by way of Scott.
Following conversations between plaintiff and IP's counsel, counsel wrote to Scott that same day, April 7th, and advised him of the nature of their conversation and also requested that Scott return the $6,000 draft and settlement papers. IP's counsel also wrote a letter on April 7th to the insurance adjuster advising the adjuster of his conversation with the plaintiff and suggesting that the prescription of five years had run in the lawsuit. Although informing the adjuster of the plaintiff's offer to settle the case for $10,000, counsel requested authority to file a motion to dismiss. Shortly thereafter, IP's counsel filed a motion to dismiss plaintiff's worker's compensation case for failure to take any action for five years. Plaintiff signed a return receipt on April 22, 1988, acknowledging receipt of notice in that respect.
On April 14, 1989, plaintiff filed suit against Scott and his professional liability carrier, seeking damages for legal malpractice, resulting in plaintiff's loss of his worker's compensation claim against IP.
On May 17, 1989, defendants filed an exception of prescription to plaintiff's *1063 present case. In November 1990, the district court opined in written reasons that plaintiff's case had indeed prescribed and dismissed the legal malpractice claim regarding Scott's alleged failure to adequately protect the dismissed worker's compensation claim. The district court supplied a "partial" exception of no cause of action to plaintiff's remaining claim that Scott had failed to take any action involving a potential claim against the drug manufacturer of eye drops which plaintiff alleged caused him permanent eye damage, and gave plaintiff 15 days to amend. Plaintiff failed to amend and the district court rendered judgment dismissing the remainder of plaintiff's case.
Plaintiff now brings this appeal, alleging the district court erred in finding that his claims had prescribed and that he had failed, in part, to state a cause of action.

PRESCRIPTION OF LEGAL MALPRACTICE CLAIM
In the absence of an express warranty of result, a claim for legal malpractice is a delictual action subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. LSA-C.C. Art. 3492; Braud v. New England Insurance Company, 576 So.2d 466 (La.1991).
The cause of action arises before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue. Braud v. New England Insurance Company, supra.
The recent case of Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La. 1992), although involving accounting malpractice, presents an issue similar to that of the instant case on the dispositive issue. There, the supreme court found that the plaintiff's claim against an accountant for professional malpractice had prescribed because plaintiff had knowledge that he had been damaged over one year prior to the filing of his malpractice lawsuit.
Harvey reacquired a corporation which he had sold about a year and a half before. Based upon financial statements prepared by his vendor (his original vendee) and its accountant, Harvey then sold the corporation again, with warranty. The new vendee advised Harvey in July 1984 that the IRS was auditing the corporation, and in November 1984, Harvey's own accountant and attorney met with the IRS agent at its regional office, where they were told that the corporation's tax returns had been prepared incorrectly.
In October 1985, the IRS issued a "thirty day letter" proposing a deficiency in excess of $150,000. In December 1986, Harvey negotiated a settlement with the IRS of some $177,000 in satisfaction of both tax liability and interest. Harvey also incurred legal and accounting fees of over $31,000.
Harvey filed suit against the original vendee and its accountant on June 15, 1987. The accounting firm filed an exception of prescription, which was sustained by the district court, basing its conclusion on the fact that Harvey was aware as early as July 1984 that an audit was being conducted. The court of appeal affirmed, but concluded that prescription had not begun to run until November 1984, when the IRS advised his accountant and attorney that the tax returns were unacceptable. At this point, the appellate court reasoned, damage, at least to the extent of accounting and legal fees, was inevitable.
The supreme court affirmed the lower court decisions, concluding that Harvey knew of the accountant's negligence in November 1984 and had sustained appreciable harm in the form of accountant's and attorney's fees. The ultimate test in Harvey is whether actual damage was brought home to the plaintiff before one year prior to filing suit, based on the facts and circumstances of that case.
Similarly, we conclude in the instant case that the district court was not manifestly erroneous in concluding, as a matter of fact, that the plaintiff knew on April 6, 1988, that the five-year abandonment period *1064 had run on his worker's compensation case (the wrongful act) and that plaintiff had a heated discussion with Scott concerning the implications (the damages) of the abandonment. On that day, both knowledge of the negligent act and the resulting damages were "brought home" to plaintiff and he had one year from that date within which to file suit against Scott for alleged professional malpractice.[2]
Plaintiff argues that, as a layman, he had no idea what it meant for his case to have been abandoned and, ultimately, what would be the result of that. In support of this argument, plaintiff notes that he has only a limited educational background. A plaintiff may not escape the commencement of prescription by attempting to establish that his ability to comprehend and evaluate the facts is something less than that possessed by a reasonable man. Norwood v. Fish, 537 So.2d 783 (La.App. 2d Cir.1989), writ denied, 539 So.2d 634 (La. 1989). Because Scott warned plaintiff on April 6, 1988, that his case had been abandoned, the "red flag of malpractice" must necessarily have been waved in front of his eyes, Norwood v. Fish, supra, and he should have taken steps to investigate and prosecute his claim against Scott prior to the running of the prescriptive period on April 6, 1989.[3]
Plaintiff also argues that, despite the legal abandonment of his case, he was not damaged until he received notice that his case was dismissed. He notes that the defendant in his worker's compensation case could have waived the abandonment.
While it would have been legally possible for IP to take some post-abandonment action which would have amounted to a waiver of the abandonment,[4] plaintiff's reliance thereon is without foundation. The record before this court contains no indication that IP had any intentions other than to dispose of the lawsuit. The only actions taken by IP after the abandonment, whether on or off the record, were to attempt to conclude the matter with one final offer to settle and, when that failed to meet with success, to file a motion to dismiss the lawsuit based on plaintiff's abandonment. In fact, it will be recalled that on April 7, 1988, defense counsel in the compensation suit wrote seeking authority to file to dismiss that suit. Thus, despite that the correctness of plaintiff's legal argument is not subject to dispute, it is without factual basis.
For the above and foregoing reasons, we affirm the district court's judgment dismissing plaintiff's claim on the basis that it had prescribed.

NO CAUSE OF ACTION
The second assignment of error by the plaintiff-appellant is that the district court erred in supplying a "partial" exception of no cause of action regarding plaintiff's allegation in the lawsuit that Scott committed malpractice with respect to a claim plaintiff had against the manufacturer *1065 of eye drops which plaintiff believed may have caused his eye damage.
The purpose of the peremptory exception of no cause of action is to test whether plaintiff's allegations entitle him to any remedy whatsoever at law. For purposes of deciding this exception, all well-pleaded allegations of the petition must be taken as true. Any doubt as to the sufficiency of the petition must be resolved in favor of the plaintiff. The exception must be overruled unless its allegations affirmatively establish that under no facts admissible under the allegations of the petition does plaintiff have a cause of action and unless its allegations exclude every reasonable hypothesis of facts other than those showing that plaintiff cannot recover as a matter of law. McIlwain v. Manville Forest Products, Corp., 416 So.2d 954 (La.App. 2d Cir.1982), on appeal after remand, 499 So.2d 1138 (La.App. 2d Cir.1986).
We reproduce herein the entirety of the allegations of plaintiff's petition regarding alleged malpractice by Scott regarding the possibility that eye drops may have caused plaintiff eye damage.
Also, on or about December 11, 1987, LEROY SCOTT was informed that some of the problems in Plaintiff's eyes, mainly cataracts, were possibly caused by the use of the drug, Neodecadron. LEROY SCOTT was informed of a possible claim against the company that manufactured Neodecadron, yet did nothing to pursue this claim.
The district court was correct. Plaintiff does not allege a cause of action against Scott insofar as the above language is concerned. He fails to allege that he retained Scott or that Scott had agreed to represent him in that respect. The plaintiff was given an opportunity to amend to assert additional facts and failed to do so. Thus, under the facts presented, no duty by Scott to the plaintiff is alleged.
For the above and foregoing reasons, the judgment of the district court is affirmed with all costs to be paid by plaintiff-appellant.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, LINDSAY and STEWART, JJ.
Rehearing denied.
NOTES
[1] Scott testified that it was his impression that Woods withdrew because of plaintiff's attitude regarding the case, specifically, that plaintiff was "hardheaded."
[2] Initially, we were concerned by the record's obvious suggestion that Scott may have still been acting as the plaintiff's attorney while negotiating this settlement after his formal withdrawal. Prescription is interrupted when the professional's involvement for performance of the specific service at issue continues. Lima v. Schmidt, 595 So.2d 624, (La.1992). However, any continuing representation by Scott after his withdrawal is not at issue since it is clear that Scott was out of the case by April 6/7, 1988, the date the district court concluded that plaintiff had knowledge of having been damaged.
[3] Plaintiff does not argue, nor does the record suggest a basis for, the application of the doctrine of contra non valentum. For a thorough discussion of this concept, see Corsey v. State, Department of Corrections, 375 So.2d 1319 (La. 1978). For a discussion of the doctrine specifically applied to legal malpractice, see Olivier v. National Union Fire Insurance Company, 499 So.2d 1330 (La.App. 3rd Cir.1986), and Blanchard v. Reeves, 469 So.2d 1165 (La.App. 5th Cir. 1985), writ denied, 476 So.2d 347 (La.1985).
[4] For a discussion of waiver of abandonment by a party defendant once the time has run under LSA-C.C.P. Art. 561, see Chevron Oil Co. v. Traigle, 436 So.2d 530 (La.1983), on appeal after remand, 476 So.2d 948 (La.App. 1st Cir.1985). For examples of actions that constitute such waiver, see Middleton v. Middleton, 526 So.2d 859 (La.App. 4th Cir.1988), and D & S Builders, Inc. v. Mickey Construction Co., Inc., 524 So.2d 245 (La.App. 5th Cir.1988), and cases cited therein.