669 So.2d 682 (1996)
Mary Helen SMITH and John Houston Smith, Plaintiffs-Appellants,
v.
Johnny R. BOOTHE, the Law Firm of Singer, Boothe and Dean, and the Home Insurance Company, Defendants-Appellees.
No. 28065-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
Writ Denied May 10, 1996.
*683 Chris J. Roy, Alexandria, for Appellants.
Cook, Yancey, King & Galloway by F. Drake Lee, Jr., Shreveport, for Appellees.
Before MARVIN, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Plaintiffs appeal, and we affirm, a district court decision sustaining an exception of prescription in this legal malpractice action.

FACTS
In May 1991, John H. Smith and his wife, Mary Helen Smith, hired attorney Johnny Boothe to negotiate, on their behalf, an agreement for a third party to market two farm implements invented by the husband. Soon thereafter, Mrs. Smith also sought the lawyer's assistance in filing a Chapter 11 bankruptcy. Boothe, however, declined that task, advising instead that other counsel be obtained in that proceeding.
Even so, following unsuccessful efforts to retain other representation for the bankruptcy, the couple again requested Boothe's services in the matter. This time he reluctantly agreed to assist, although the lawyer and his clients obviously had different views as to the intended extent of his involvement. Mrs. Smith would later maintain that Boothe accepted the entire case for the charged fee of $500, while he contended that he assented only to help fill out the Bankruptcy Petition Cover Sheet. Whatever the understanding, in the space provided in the petition for identifying the attorney of record, no name appears and the box labeled "No Attorney" is marked. Furthermore, only the wife signed the line labeled "Signature of Attorney (or Debtor)."
On June 20, 1991, the Smiths filed their petition for relief under Chapter 11 of the Bankruptcy Code. More importantly, a short time later on July 23, 1991, the couple, represented by Boothe, executed an agreement granting Johnny Porch the exclusive right to manufacture, market, and distribute *684 the two inventions. The licensee agreed therein to compensate the husband and wife with a commission on each unit sold and to pay, on that sum, an advance of $3000 per month for one year. In addition, the contract required that the proceeds be sent to Boothe's office for disbursement in accordance with his clients' instructions.
Subsequently on October 2, 1991, the bankruptcy trustee filed a motion that the Chapter 11 matter be dismissed or converted to a Chapter 7 liquidation action. Although asserting several grounds, that pleading specifically averred that the couple executed the marketing agreement, subsequent to instituting the bankruptcy proceedings, without first securing court approval as required by law. Eventually, following the Smiths' pro se appearance at a hearing, the bankruptcy judge converted the proceedings into a Chapter 7 case pursuant to an order dated November 12, 1991.
The next day, upon notification of the conversion and receiving instructions to do so, Boothe forwarded the $3000 licensing advance then in his possession to the bankruptcy trustee. Understandably unhappy with that occurrence, Mrs. Smith terminated Boothe's employment. Accordingly, by letter dated December 2, 1991, he notified Porch that he no longer represented the couple and that all future payments should be made directly to them.[1]
Later, on November 4, 1992, the bankruptcy judge addressed the debtors' pro se request for a return of the $3000 advance forwarded to the trustee by Boothe. After a contradictory hearing, the court not only denied the motion but also chastised the couple for having unlawfully entered into the licensing agreement without first securing appropriate approval.
On November 3, 1993, the Smiths filed suit against Boothe, his law firm, and its legal malpractice insurer. The couple alleged that they sustained damages through the conversion of the bankruptcy, after the attorney negotiated and recommended execution of the marketing contract without prior approval. The district court, however, upon concluding that prescription began running on December 2, 1991, sustained the defendants' exception that the action had been untimely. Following the denial of a new trial motion, this appeal ensued.

DISCUSSION
The Smiths contend that, until the bankruptcy judge indicated the negotiation and signing of the marketing contract violated bankruptcy law and thus caused their Chapter 11 proceeding to be converted, they did not know Boothe's actions might subject him to malpractice liability. Consequently, they maintain that the prescriptive period for their claim did not begin to run until November 4, 1992, less than a year prior to the institution of their suit. We disagree.
Legal malpractice claims must be brought within one year from the date of the alleged act, omission, or neglect, or within one year from the date the alleged act, omission, or neglect is discovered or should have been discovered. La.R.S. 9:5605(A). Essentially, the prescriptive period does not begin to run against a party who is ignorant of the facts upon which his claim is based, unless such nescience is willful, negligent, or unreasonable. Norwood v. Fish, 537 So.2d 783 (La.App. 2d Cir.1989), writ denied, 539 So.2d 634 (La.1989). The proper focus, then, is on the reasonableness of the tort victim's action or inaction. Id. Moreover, it is not necessary that the client sustain all, or even the greater part, of the damages occasioned by his attorney's fault before a cause of action for malpractice arises. Instead, any appreciable and actual harm flowing from the lawyer's negligent conduct establishes justiciability. Braud v. New England Ins. Co., 576 So.2d 466 (La.1991); Teague v. Scott, 597 So.2d 1060 (La.App. 2d Cir.1992), writ denied, 604 So.2d 972 (La.1992); Landmark Sav. Bank v. Greenwald, 582 So.2d 943 (La. App. 2d Cir.1991).
*685 In the case sub judice, the bankruptcy trustee filed a motion that eventually resulted in the conversion of plaintiffs' federal proceedings from Chapter 11 to Chapter 7. As a supporting ground, that October 2, 1991 pleading underscored the Smiths' failure to secure court authorization before entering into the licensing agreement. Hence, by that time, appellants reasonably recognized that the contract Boothe negotiated, and apparently recommended they execute, possibly breached the Bankruptcy Code. Furthermore, just over one month later, the bankruptcy court granted the requested conversion. That order, beyond actually harming the couple, provided additional notice that they may have received erroneous advice from their attorney. In fact, the concomitant forwarding of their $3000 check to the trustee prompted Mrs. Smith to dismiss Boothe.
Considering these events, the trial court did not err in sustaining the exception of prescription. Encountering, by early November 1991, the indicated elements of a malpractice action, the Smiths should have taken practical steps to investigate further and prosecute any such claims against defendants, prior to the running of the prescriptive period. Cf. Teague, supra. This is true despite appellants' contention that, as non-lawyers, they could not know their attorney had committed a negligent or illegal act. Under such circumstances, a layman may not escape commencement of prescription by asserting that his ability to comprehend and evaluate the facts is limited. Teague, supra. Furthermore, even though Boothe's continued representation of the couple suspended prescription until his termination on December 2, 1991, see Lima v. Schmidt, 595 So.2d 624 (La.1992),[2] the time limit for bringing suit ran long before plaintiffs instituted their action on November 3, 1993.
In oral argument, appellants have additionally contended that the trustee's actions prevented them from suing and that federal law provides a two-year suspension of prescription during the pendence of bankruptcy proceedings.[3] Having failed to plead or raise this issue in the trial court, however, they are precluded from asserting it on appeal. URCA Rule 1-3; State v. Wafer, 27,433 (La.App. 2d Cir. 09/27/95), 661 So.2d 569; Haltom v. State Farm Mut. Auto. Ins. Co., 588 So.2d 792 (La.App. 2d Cir.1991). Moreover, inasmuch as their claim against Boothe arose after the filing of their original bankruptcy case, nothing prevented them from bringing suit even after the Chapter 7 conversion. In this situation, it is incumbent upon the debtor, not the bankruptcy trustee, to pursue any potential cause of action. See Minnieweather v. Brumley, 602 So.2d 1062 (La.App. 2d Cir.1992); In the Matter of Phillip, 948 F.2d 985 (5th Cir.1991).

CONCLUSION
For these reasons, we affirm the decision of the trial court sustaining defendants' exception of prescription and dismissing plaintiffs' suit. All costs are assessed to appellants.
AFFIRMED.
NOTES
[1] Earlier, Boothe received two other licencing payments. After deducting $500 from each of these to cover owed fees, he sent the balance of the funds to his clients. Following the third installment, and apparently due to the Smiths' failure to institute legal action against a possible patent infringement, Porch discontinued the monthly advances.
[2] Subsequently effective amendments to La.R.S. 9:5605 now provide that its time limitations "may not be renounced, interrupted, or suspended." See Acts 1992, No. 611.
[3] Although not specifically cited, appeal counsel presumably refers to the provisions of the United States Bankruptcy Code found at 11 U.S.C. § 108.