# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 05-458

ATLAS IRON AND METAL COMPANY

VERSUS

D. WARREN ASHY

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 98-6143
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and J. David Painter, Judges.

AFFIRMED.

Henry James Miltenberger, Jr.
2100 Covington Centre
Covington, LA 70433
Telephone:  (985) 898-1544
COUNSEL FOR:
        Defendant/Appellee - Gilsbar, Inc.

William H. Parker, III
ALLEN & GOOCH
P. O. Drawer 3768
Lafayette, LA 70502-3768
Telephone:  (337) 291-1270
COUNSEL FOR:
        Defendants/Appellees - Westport Insurance Company and D. Warren Ashy

**George Febiger Riess**
**228 St. Charles Avenue - Suite #1224**
**New Orleans, LA 70130**
**Telephone:  (504) 568-1962**
**COUNSEL FOR:**
     **Plaintiff/Appellant - Atlas Iron and Metal Company**

THIBODEAUX, Chief Judge.

Plaintiff, Atlas Iron and Metal Company ("Atlas"), appeals a trial court judgment which dismissed a legal malpractice claim against Defendant, D. Warren Ashy, on the basis of peremption pursuant to La.R.S. 9:5605. Atlas avers that it did not have actual or constructive knowledge of Mr. Ashy's failure to investigate insurance coverage a year before its lawsuit was filed and that its cause of action accrued only when actual and appreciable damages were sustained. We disagree and affirm the judgment of the trial court.

I.

**ISSUE**

Does peremption begin to run under La.R.S. 9:5605 when a client learns facts that should put a reasonable person in the client's position on notice that their attorney may have committed malpractice, and is there an additional requirement that the peremption periods cannot begin to run until the client suffers actual and appreciable damages?

II.

**FACTS**

Atlas and four other defendants were sued in the Civil District Court for the Parish of Orleans. The claims against them included an action for conversion for the alleged improper and unauthorized misappropriation of dismantled drilling equipment for use as scrap metal. Four of the defendants, including Atlas, hired appellee, attorney Warren Ashy (Mr. Ashy), to defend them in that lawsuit. Trial on the matter was set for September 9, 1996. On the first morning of trial, the attorneys for each side met with District Judge Michael Bagneris for a pre-trial conference.

1

Judge Bagneris asked Mr. Ashy if his clients, including Atlas, had insurance coverage to help them pay for any damage award if they were unsuccessful at trial. Mr. Ashy came out of the pre-trial conference and directly asked Atlas' President, Mr. Robert Adler, about the existence of insurance coverage for damage awards.

Atlas and the other defendants lost the case. They were ordered to pay damages to the plaintiff in the amount of $395,843.00. Mr. Ashy filed an appeal on behalf of Atlas and the other defendants with the Louisiana Fourth Circuit Court of Appeal. The case was affirmed by the fourth circuit in January of 1998. Mr. Ashy then applied for writs of certiorari or review with the Louisiana Supreme Court. The supreme court reversed the trial court and the court of appeal, and remanded the case back to the trial court on the issue of apportionment of fault and damages. The parties eventually settled the underlying litigation for $42,000.00 in September of 2000.

In March of 1998, Atlas hired attorney George Reiss to offer an opinion about Mr. Ashy's handling of the case. In April of 1998 Mr. Reiss advised Atlas that Mr. Ashy may have committed legal malpractice by not joining Atlas' insurance companies in the original lawsuit. A suit for legal malpractice was filed against Mr. Ashy on December 30, 1998, in the Fifteenth Judicial District Court. The trial court sustained Mr. Ashy's exception of prescription. Atlas now appeals that decision.

III.

**LAW AND DISCUSSION**

**Standard of Review**

A trial court's factual determinations can only be overturned if they are clearly wrong or if the trial court committed manifest error.

> It is well settled that a court of appeal may not set
> aside a trial court's or a jury's finding of fact in the absence

2

of "manifest error" or unless it is "clearly wrong," and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

*Rosell v. Esco*, 549 So.2d 840, 844 (La.1989) (citations omitted). Therefore, an appellate court reviews the trial court record in its entirety, and determines whether the trial court reached a reasonable conclusion based on the facts and evidence in that record. *Id.*

The trial court determined that prescription began to toll on Atlas' alleged malpractice claim on September 10, 1996, the date that damages were awarded against Atlas by the trial court on the conversion claim. The trial court reasoned that when Mr. Ashy asked his client, Atlas, if there was an insurance policy to cover the damage claim awards, a reasonable person in Atlas' position would have been put on notice that there was a reason for concern regarding Mr. Ashy's representation.

**Louisiana Revised Statutes 9:5605 Peremption Time Periods**

Louisiana Revised Statutes 9:5605 governs claims for legal malpractice. The relevant parts of the statute are as follows:

### § 5605. Actions for legal malpractice

A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been

discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. *The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.*

(Emphasis added).

The prescription periods in this statute are peremptory. This means that both the underlying cause of action and the legal right to bring that cause of action to court dissolve at the end of the specified periods of limitation. There are two ways to start the peremption clock running under La.R.S. 9:5605. The peremption period will begin to run one year from the date when a client knew or should have known about the act, omission, or negligence on the part of his or her attorney that indicates that the client may be a victim of an act of malpractice. *See* La.R.S. 9:5605(A). Additionally, the peremption clock will start running on the date of the act, omission, or negligence that allegedly constitutes malpractice, and will toll three years from that date regardless of whether a client discovered, knew, or should have known about the attorney's alleged malpractice. *Id.* "Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation." *Reeder*

*v. North*, 97-0239, p.12 (La. 10/21/1997), 701 So.2d 1291, 1298 (citing *Hebert v. Doctors Mem'l Hosp.*, 486 So.2d 717, 723 (La.1986)).

### How to Determine if a Client Knew or Should Have Known About the Alleged Attorney Malpractice

The peremption period begins to run when a client knows or should have known that a lawyer's actions or inaction may cause the client to incur damages, thereby creating a legal cause of action. Therefore, courts look to see when a client "knew of the existence of facts which would have enabled him to state a cause of action for legal malpractice." *Dauterive v. Landry and Watkins*, 01-1112, p. 18 (La.App. 3 Cir. 3/13/02), 811 So.2d 1242, 1255. It is also possible for a client to have constructive knowledge of facts sufficient to "place a reasonable man on notice that malpractice may have been committed," such that the one year peremption period will begin to toll. *Id.* at 1254 (quoting *Taussig v. Leithead*, 96-690, p. 6 (La.App. 3 Cir. 2/19/97, 689 So.2d 680, 684). The Louisiana Supreme Court is in full agreement:

> Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. *Percy v. State, E.A. Conway Memorial Hosp.*, 478 So.2d 570 (La.App. 2 Cir. 1985). A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start [the] running of prescription.

*Campo v. Correa*, 01-2707, pp. 11-12 (La. 6/21/02), 828 So.2d 502, 510-11 (citations omitted).

The facts of this case and the case record reveal that Atlas had constructive knowledge, if not actual knowledge, of facts that should have excited their attention, put them on guard, and called for inquiry into the potential malpractice allegedly committed by Mr. Ashy more than one year before Atlas actually did file this malpractice claim. Atlas' President and agent, Robert Adler, stated in his deposition that he has been in business since 1962. He acknowledged that he has had experience with claims made against his company that required him to invoke his insurance coverage. He admits that he knew that his insurance company would provide him with the services of an attorney if he were ever sued for actions related to his business. Mr. Adler also stated that he felt that Mr. Ashy did nothing to prepare for trial, did nothing or very little at trial, and that Mr. Ashy did not seem to put up much of a defense at all during the trial. For example, Mr. Adler noted that Mr. Ashy did not tell the court that the co-defendants had done nothing wrong, and that it seemed Mr. Ashy was not aware of the existence of Atlas' insurance coverage until the first day of the trial. Mr. Adler goes on to admit that he found out that his insurance companies were not involved in the suit on the morning of the first day of trial, September 9, 1996.

In *Grunblatt v. Beevers*, 01-1015, pp. 3-4 (La.App. 5 Cir. 12/26/01), 806 So.2d 785, 787, the court found that when the client made the following statement, "Mr. Beevers did not do the legal work I paid for," it indicated that the client knew "that an action for malpractice may have existed." This is similar to Mr. Adler's statements in his deposition that he felt Mr. Ashy did little or nothing for him both before or during the trial in September of 1996. Given these facts, it is difficult to believe that Atlas was not aware that there was a problem with Mr. Ashy's representation as of September 10, 1996.

**The Reasonable Person Standard Requires No Sophistication**

The standard for determining when a client knows or should know about the act, omission, or negligence of his or her attorney is that of an objective, reasonable person. "[A] plaintiff . . . may not escape the commencement of prescription by attempting to establish that his ability to comprehend and evaluate the facts is something less than that possessed by a reasonable man." *Taussig*, 689 So.2d at 684 (quoting *Norwood v. Fish*, 537 So.2d 783, 787 (La.App. 2 Cir.), *writ denied*, 539 So.2d 634 (La.1989)). Atlas claims that the standard for determining when a client knew or should have known of facts giving rise to a claim for legal malpractice is based upon the *sophistication* of a reasonable man, thereby turning an objective standard into a subjective one. There is no authority for the proposition that the sophistication of the individual client should be taken into account. In fact, our jurisprudence is consistent in stating that the reasonable man standard is unequivocally an objective standard, not a subjective one based on the sophistication of each individual client:

> This standard is designed to establish a rule that any plaintiff who had knowledge of facts that would place a reasonable man on notice that malpractice may have been committed shall be held to have been subject to the commencement of prescription by virtue of such knowledge even though he takes the position that he did not know because these facts were not sufficient to trigger such knowledge in his mind.

*Dauterive*, 811 So.2d at 1254 (quoting *Taussig*, 689 So.2d 684). *See also*, *Smith v. Boothe*, 28,065, p. 4 (La.App. 2 Cir. 2/28/96), 669 So.2d 682, 685, *writ denied,* 96-0821 (La. 5/10/96), 672 So.2d 928, which explains:

> Encountering, by early November 1991, the indicated elements of a malpractice action, the Smiths should have taken practical steps to investigate further and prosecute any such claims against defendants, prior to the running of the prescriptive period. Cf. *Teague* [*v. Scott*, 597 So.2d 1060 (La.App. 2 Cir. 1992), *writ denied*, 604 So.2d 972

(La.1992)]. This is true despite appellants' contention that, as non-lawyers, they could not know their attorney had committed a negligent or illegal act. Under such circumstances, a layman may not escape commencement of prescription by asserting that his ability to comprehend and evaluate the facts is limited. *Teague*[, 597 So.2d 1060].

Accordingly, the reasonable person standard requires no inquiries into the sophistication of an individual client as it is a subjective standard, as stated succinctly in *Taussig*. "The test in this case . . . is what a reasonable person in [the plaintiff's] position at the time knew or should have known and what she had discovered or should have discovered in the words of the statute – the reasonable person we refer to is the so-called 'objective reasonable person.'" *Taussig*, 689 So.2d at 684.

## Actual and Appreciable Damages and the Commencement of the Peremption Periods in La.R.S. 9:5605

Atlas obfuscates the elements that are necessary to start the running of the peremption period under La. R.S. 9:5605 with the requirement that actual and appreciable damages accrue in order for a client to have a viable cause of action. While La.R.S. 9:5605 does state that one must have damages in order to meet the eligibility criteria for application of the statute, it does not specify that a client must incur complete, final, and definitive damages before a claim of malpractice can be filed. *See* La.R.S. 9:5605(A).

In order to bring suit for an alleged civil offense, a potential plaintiff must have both a cause of action and a right of action. A cause of action is defined by BLACK'S LAW DICTIONARY as follows: "The fact or facts which give a person a right to judicial redress or relief against another. A situation or state of facts which would entitle [a] party to sustain [an] action and give him [the] right to seek a judicial remedy in his behalf." BLACK'S LAW DICTIONARY 221 (6th ed. 1990).

Atlas argues that until a client incurs final and definite damages, there is no cause of action. Without a cause of action, Atlas argues, the peremption period does not begin to run. Even the cases cited by Atlas for this proposition state that it is not necessary for damages to be finally ascertained in order for peremption to begin. For example, in *Academy Mortgage Co., L.L.C. v. Juarez*, 98-963 (La.App. 5 Cir. 6/1/99), 740 So.2d 708, *writ denied*, 99-2238 (La. 11/5/99), 750 So.2d 191, the fifth circuit elaborates on what is meant by actual and appreciable damages. The court implied that actual and appreciable damages does not mean final and definitive damages. *Academy Mortgage* cited *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La.1992) which concluded that "there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action." The same is true regarding the existence of a cause of action in legal malpractice.

Atlas also cites *Smith v. Boothe*, 669 So.2d at 682, to support its assertion that damages must be final and complete before a client's cause of action in legal malpractice is justiciable. While the court in *Smith v. Boothe* stated that actual and appreciable damages are required to make a client's malpractice tort claim ripe, it goes on to state that those damages do not have to be final or even fully realized. Specifically, the *Smith* court stated, "[m]oreover, it is not necessary that the client sustain all, or even the greater part, of the damages occasioned by his attorney's fault before a cause of action for malpractice arises. Instead, any appreciable and actual harm flowing from the lawyer's negligent conduct establishes justiciability." *Id*. at 684. (citations omitted). Therefore, a client must have some kind of damages in order to have a cause of action to bring suit for their legal malpractice cause of action. While those damages must be actual in order to sustain a cause of action,

there is no specific dollar amount, nor do the damages amounts have to be alleged in amounts that are complete and fixed. *Id.*

The Louisiana Supreme Court has made it clear that a cause of action for legal malpractice can perempt and extinguish even if the client never discovers that cause of action, or the facts never ripen into a justiciable case. *Reeder*, 701 So.2d 1291. "[T]here is no doubt that the Legislature intended that three years after the 'act, omission, or neglect,' the cause of action is extinguished, regardless of when the negligence is discovered and regardless of whether a malpractice action may be brought within that three year period." *Id.* at 1297. Therefore, peremption begins to run when a client knows or should have known of an act, omission, or negligence by their attorney even though the cause of action may not ripen into a justiciable claim until the client experiences some damages. *Id.* If no damages are incurred within three years of the act, omission, or negligence, the cause of action and right of action perempts regardless. *Id.*

Atlas claims that actual and appreciable damages were not incurred until September 15, 2000, when Atlas wrote out checks totaling $42,000.00 to settle the underlying claim between the parties. However, Atlas weakens its own argument because the suit for malpractice was filed on December 30, 1998, which was a year and nine months before Atlas argues actual and appreciable damages were incurred. Atlas argues that the basis for its cause of action against Mr. Ashy is the failure to join Atlas' insurance companies as co-defendants in the underlying case. Atlas knew on the morning of the first day of trial that its insurance companies were not co-defendants the morning of trial, September 9, 1996. There was an award of damages against Atlas issued by the trial court on September 10, 1996. Consequently, on September 10, 1996, Atlas had a cause of action in malpractice due to Mr. Ashy's failure to join Atlas' insurers in the suit as co-defendants, and had incurred actual

10

damages by way of a final judgment. On September 10, 1996, the peremption clock began running. Therefore, the trial court came to a reasonable conclusion that the peremption period began running on that date, perempting a claim for malpractice based on that action, omission, or neglect on or after September 11, 1997.

IV.

## CONCLUSION

For the foregoing reasons, the trial court was reasonable in concluding that Atlas first learned of the act or omission of not joining their insurance companies as co-defendants on the days of trial, September 9-10, 1996. Given that this conclusion was reasonable, the court of appeal may not reverse that determination. In addition, La.R.S. 9:5605 requires that a client have some kind of damages that are real and tangible, but La.R.S. 9:5605 does not require damages to be finally incurred and definite in amount and scope before a client may initiate a malpractice action against an attorney. Therefore, the judgment of the trial court is affirmed. Appellant, Atlas Iron and Metal Company, is cast with all costs of this appeal.

**AFFIRMED**.